IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

OCTOBER 1997 SESSION

FILED

February 24, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. No. 03C01-9702-CR-00081 |
| Appellee, | * | HAMBLEN COUNTY |
| VS. | * | Hon. James E. Beckner, Judge |
| DWIGHT D. WINN, | * | (Certified question of law) |
| Appellant. | * | |

For Appellant:

Paul G. Whetstone
502 North Jackson Street
Morristown, TN 37814

For Appellee:

John Knox Walkup
Attorney General and Reporter

Michael J. Fahey, II
Assistant Attorney General
425 Fifth Avenue North
Second Floor, Cordell Hull Building
Nashville, TN 37243

Victor Vaughn
Assistant District Attorney General
510 Allison Street
Morristown, TN 37814

OPINION FILED:_____

REVERSED AND REMANDED

GARY R. WADE, JUDGE

The defendant, Dwight D. Winn, pled guilty to simple possession of marijuana, a Class A misdemeanor, reserving a certified question of law for appeal. Tenn. R. Crim. P. 37(b)(2)(i). The trial court imposed a sentence of eleven months and twenty-nine days and fined the defendant two hundred fifty dollars.

In this appeal, the defendant asserts that the trial court should have sustained his motion to suppress. Initially, the defendant asserts that the law enforcement officer had no basis to frisk him at the sobriety checkpoint. Secondly, the defendant questions whether the officer had probable cause to remove the contents of his rear pants pocket under the "plain feel" doctrine. We must reverse the judgment of the trial court and remand the cause to the trial court.

On March 23, 1996, Officer Phil Hurst, who by then had worked for the DUI enforcement unit of the Morristown Police Department almost five years, began a random DUI checkpoint on Highway 25-E at approximately 10 p.m. Later, when the defendant stopped at the checkpoint and provided his driver's license, Officer Hurst noticed he had "watery or glassy type eyes" and "seemed a little confused." When asked his destination, the defendant replied "Mississippi Alabama." Officer Hurst suspected the defendant might be under the influence and directed him to stop his vehicle for further investigation.

Officer Hurst, who described the defendant as cooperative and able to operate his vehicle without difficulty, conducted a frisk as soon as the defendant stepped outside his car. When he "ran across a bundle" in the defendant's left rear pocket, the officer concluded the bundle was like marijuana he "had felt before in the past ...." The officer then removed the substance from the defendant's pocket,

arrested him and inventoried his vehicle. Later, while at the police department, the defendant performed sobriety tests satisfactorily. There were no charges for driving under the influence.

While Officer Hurst testified that the basis for his suspicions was the defendant's "impaired driving," he acknowledged that he had not seen the defendant drive in an unusual manner. He conceded that he had not obtained consent for the frisk.

The officer denied that race was the basis for his further investigation of the defendant, who is African-American. He recalled on the same evening, asking a Caucasian female, whom he did not frisk, to pull her vehicle to the side for further investigation. Although he admitted that he did not frisk everyone before conducting sobriety tests, Officer Hurst thought that the better practice was to do so in each instance.

At the time of the hearing, the defendant, a thirty-four-year-old Morristown resident, had been an employee of Lear Seating for fourteen years. He testified that as he approached the checkpoint, an officer directed him to the side of the roadway, requested his driver's license, and asked if he had been drinking or had any empty containers in the car. The defendant replied in the negative and told the officer that he had just awoken and was traveling to his aunt's funeral in "Alabama Mississippi." He claimed that when Officer Hurst asked for clarification, he answered "Alabama via Mississippi" so that he could pick up his cousin along the way. The defendant recalled consenting to a search of his vehicle and stepping out of his car. Officer Hurst, without any prior indication of his intentions, searched his front pockets. The defendant explained that he pushed the officer's hands away

3

because he did not think the officer had any reason to search.  He acquiesced only when the officer became more forceful.  The officer removed several items, such as business cards and chapstick, from his front pockets then searched a rear pocket, where he found the marijuana.

The trial court ruled as follows on the motion to suppress:

> When the defendant exited the automobile to perform the field sobriety tests, the officer conducted a pat-down.  Terry allows a person [] detain[ed] under articulable, reasonable suspicion of criminal activity to be patted down ....  The pat-down would have to be before the field sobriety tests were given because that's the point at which danger would be to the officer.  If an officer w[ere] negligent enough to intend to conduct a pat-down subsequent to a field sobriety check ... this defendant wasn't, but if he was one of those that had a weapon in his pocket, the officer would probably be dead by the time field sobriety tests were over with.  So the only sensible time to make a Terry pat-down is when the defendant would first leave the vehicle....
> The next question is, in his search for weapons, when he felt this thing in the defendant's pocket that felt, under his training ... and experience ... like a package of marijuana ... and you certainly have exigent circumstances then, and the search is appropriate....
> So from all those facts and circumstances, I believe the state can sustain its position in making the detention and the subsequent pat-down and search.  And the motion to suppress must be overruled.

Our scope of review is limited.  A trial court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise.  State v. Odom, 928 S.W.2d 18 (Tenn. 1996); State v. Tate, 615 S.W.2d 161, 162 (Tenn. Crim. App. 1981); Graves v. State, 512 S.W.2d 603, 604 (Tenn. Crim. App. 1973); see Tenn. R. Crim. P. 12(e).  Yet, this court must conduct a de novo review of the trial court's application of law to fact.  State v. Ray Anthony Bridges, ___ S.W.2d ___, No. 02S01-9606-CC-00053, slip op. at 4 (Tenn., at Jackson, Dec. 31, 1997); State v.

4

Wayne Lee Yeargan, ___ S.W.2d ___, No. 01S01-9604-CC-00080, slip op. at 5 (Tenn., at Nashville, Nov. 24, 1997).

Initially, both the state and federal constitutions protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Tenn. Const. art. I, § 7. An automobile stop constitutes a "seizure." See Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450, 110 S. Ct. 2481, 2485 (1990); State v. Pully, 863 S.W.2d 29, 30 (Tenn. 1993). Sobriety checkpoints have been upheld as constitutional intrusions if operated under previously determined guidelines that limit the law enforcement officer's discretion and also limit intrusions into areas protected by the Fourth Amendment. State v. Downey, 945 S.W.2d 102, 104 (Tenn. 1997); see Sitz, 496 U.S. at 455, 110 S. Ct. at 2488. In Terry, the United States Supreme Court ruled as follows:

> We merely hold today that where a police officer ...
> reasonably [ ] conclude[s] ... that criminal activity may be
> afoot and that the persons with whom he is dealing may
> be armed and presently dangerous ... and where nothing
> in the initial stages of the encounter serves to dispel his
> reasonable fear for ... safety, he is entitled for [ ]
> protection ... to conduct a carefully limited search ... to
> discover weapons....

392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85 (1968). The Fourth Amendment permits a protective frisk where a law enforcement officer has reasonable suspicion that the suspect is armed. Id. at 27, 88 S. Ct. at 1883; Hughes v. State, 588 S.W.2d 296, 304 (Tenn. 1979). Reasonable suspicion is suspicion which is supported by specific and articulable facts. United States v. Cortez, 449 U.S. 411, 417, 101 S. Ct. 690, 695 (1981). These facts may stem from information provided by other law enforcement personnel, agencies or citizens; it may be derived from known patterns of criminal behavior or gleaned from the officer's experience. Bridges, slip op. at 10.

5

The defendant argues that Officer Hurst was not justified in the frisk because a suspicion for driving under the influence would not allow the officer to infer use of a weapon. In Hughes v. State, 588 S.W.2d 296, 304, 309 (Tenn. 1979), overruled on other grounds by State v. Leveye, 796 S.W.2d 948 (Tenn. 1990), our supreme court, in ruling that the frisk was not warranted, placed importance on both the nature of the suspected offense and the reasonableness of the belief that the suspect was armed:

> In Terry, the suspected criminal activity was preparation for an armed robbery; here it was a mere possessory offense. In Terry, the pat-down was validated on the basis of a founded fear of the possession of weapons; here, again, it was a possessory offense with no suspicion that [the] defendant was going armed.

A frisk has been upheld as reasonable when the suspected crime might typically involve the use of a weapon; for example, a suspicion of robbery, burglary, rape, assault with a weapon, homicide, and large scale narcotics trafficking might allow an officer to reasonably infer that a weapon might be in the possession of the suspect.[1] When, however, the likely crime does not involve a weapon, "other circumstances" must be present to justify a Terry frisk. Sibron v. New York, 392 U.S. 40, 74, 88 S. Ct. 1889, 1907 (1968) (Harlan, J., concurring)).[2] Because a suspected driver under the influence would not likely fall into the category of those who would be expected to be armed, this court must consider examples of "other circumstances":

> [A] characteristic bulge in the suspect's clothing; observation of an object in the pocket which might be a weapon; an otherwise inexplicable sudden movement toward a pocket or other place where a weapon could be concealed; an otherwise inexplicable failure to remove a

---

[1]See e.g., United States ex rel. Richardson v. Rundle, 461 F.2d 860 (3d Cir. 1972) (robbery); People v. Myles, 50 Cal. App. 3d 423, 123 Cal. Rptr. 348 (1975) (burglary); People v. Shackelford, 546 P.2d 964 (Colo. 1976) (rape); United States v. Kikumura, 918 F.2d 1084 (3d Cir. 1990) (assault with a weapon); State v. Gilchrist, 299 N.W.2d 913 (Minn. 1980) (homicide); United States v. Sinclair, 983 F.2d 598 (4th Cir. 1993) (drug trafficking).

[2] See, e.g., State v. Thomas, 542 A.2d 912 (N.J. 1988) (possession of marijuana); Whitten v. United States, 396 A.2d 208 (D.C. App. 1978) (shoplifting); State v. Fales, 540 A.2d 1120 (Me. 1988) (driving under the influence).

hand from a pocket; backing away by the suspect under circumstances suggesting he was moving back to give himself time and space to draw a weapon; awareness that the suspect had previously been engaged in serious criminal conduct; awareness that the suspect had previously been armed; [and] discovery of a weapon in the suspect's possession....

LaFave, Search and Seizure, § 9.5(a) (3d ed. 1996 & Supp. 1997) (footnotes and citations omitted); accord State v. Sanders, 435 S.E.2d 842 (N.C. App. 1993) (Terry frisk of driver stopped at roadblock was justified when driver provided no license or registration, admitted he was not owner of car, and had a bulge in front pocket the size of two fists); State v. Tilton, 561 N.W.2d 660 (S.D. 1997) (Terry frisk justified for vehicle passenger stopped at sobriety checkpoint who was hostile and uncooperative, had suspicious bulge in his pocket, and refused to remove his hands from his pockets).

The state's position is that law enforcement officers are justified in conducting a protective frisk of a suspect because vehicle stops subject officers to heightened danger. The state argues that the officer acted upon a reasonable, articulable suspicion in conducting the frisk based on the following facts: (1) that the defendant had glassy eyes; (2) that his response to a question about his destination was a "little confused"; and (3) that he attempted to push away the officer's initial attempt to search. In support of its position, the state argues that Michigan v. Long, 463 U.S. 1032, 103 S. Ct. 3469 (1983), controls. In that case, the United States Supreme Court made the following observation:

[I]nvestigative detentions involving suspects in vehicles are especially fraught with danger to police.... In Pennsylvania v. Mimms we held that police may order persons out of an automobile during a stop for a traffic violation, and may frisk those persons for weapons if there is a reasonable belief that they are armed and dangerous....

Id. at 1047-48, 103 S. Ct. at 3480 (citations omitted)(emphasis added).

7

In our view, Long is distinguishable from these circumstances. Initially, the issue in Long was whether the officers could expand the Terry frisk to the vehicle, not whether the frisk of his person was justified. Id. at 1037, 103 S. Ct. at 3474. Secondly, the behavior of the suspect and the presence of a weapon in the vehicle were determinative. Id. at 1051, 103 S. Ct. at 3482. Prior to the stop, the officers had observed the car travel erratically and in excess of the speed limit before swerving into a ditch. When Long stepped out of his vehicle, he left the door ajar. He then failed to respond to requests by officers for license and registration information and he appeared to be under the influence. It was only when Long turned toward the vehicle and the officers who followed observed a hunting knife in the floorboard of the front seat that the frisk took place. Id. at 1035-37, 103 S. Ct. at 3473-74.

Here, the trial court concluded that the frisk was reasonable because there was a basis to suspect criminal activity; it did not, however, articulate a factual basis for any inference that the defendant might be armed and dangerous. Unlike the officers in Long, Officer Hurst offered no proof that he had observed a weapon or even suspected the defendant of possessing a weapon. He observed no suspicious bulges and acknowledged that the defendant did not act defensively until he attempted to search his pockets. Officer Hurst had no prior knowledge of this defendant and no basis for any suspicion of prior violence or any history of going armed. The crime of driving under the influence does not necessarily imply the use of a weapon. Although the hour was late, the proof offered by the state was that the defendant was cooperative; that he provided a valid driver's license; and that he had offered plausible explanations for the appearance of his eyes and destination. The defendant carried luggage which was plainly visible in the back seat of his car. These factors tend to negate suspicion of the defendant rather than enhance it.

8

Although a detention for sobriety tests may have been warranted, Officer Hurst had no articulate basis to frisk the defendant for weapons. His suspicion that the defendant was under the influence turned out to be unfounded.

Where the search of a defendant was unlawful and invalid, the exclusionary rule generally requires suppression of its fruits. Weeks v. United States, 232 U.S. 383, 34 S. Ct. 341 (1914); Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684 (1961); Hughes v. State, 238 S.W. 588 (Tenn. 1922); State v. Patton, 898 S.W.2d 732 (Tenn. Crim. App. 1994); Tenn. R. Crim. P. 41(f). The dual purposes of the exclusionary rule are to protect fundamental individual liberties and to deter improper police conduct. Patton, 898 S.W.2d at 734. Because the frisk of the defendant was an unconstitutional intrusion, we must hold that the marijuana was unlawfully seized and should have been suppressed.

In his second issue, the defendant argues that the "bulge" in his rear pocket was an insufficient basis for the officer to conclude that it was an illegal substance. The state contends that the officer's search and seizure of marijuana from the defendant is justified under the "plain feel" doctrine because the content of the lump was immediately apparent to the officer based on his experience and training.

In Bridges, our supreme court articulated the three requirements for seizure of evidence under the "plain feel" doctrine:

> 1) a prior valid reason exists for the intrusion, i.e., the patdown must be permissible under Terry;
> 2) the contraband is detected while the Terry search for weapons legitimately is still in progress; and,
> 3) the incriminating nature of the object perceived by the officer's sense of touch is immediately apparent giving the officer probable cause to believe the object is contraband prior to its seizure.

Slip op. at 15 (citing Minnesota v. Dickerson, 508 U.S. 366, 113 S. Ct. 2130 (1993)). In Bridges, the officer felt a pill bottle in the defendant's jacket pocket while conducting a Terry frisk. The officer testified that he immediately recognized the bottle and "knew it was the kind that a lot of other dealers will use to keep their crack in." Id., slip op. at 17. The court held that the officer lacked probable cause to remove and open the container. Id., slip op. at 19. It ruled that the officer could not have discerned the contents of the bottle from merely touching the container:

> Courts should not surrender their common sense assessment of the sensory capacities of human touch to an officer's assertion that he or she "immediately knew" the nature of the object touched. The officer's subjective belief that the object is contraband is not sufficient unless it is objectively reasonable in light of all the circumstances known at the time of the search.

Id., slip op. at 16.

In resolving the first issue, we determined that the frisk was unjustified. Thus, the first requirement for seizure of evidence under "plain feel," that the frisk is permissible under Terry, has not been satisfied. In our view, the state has also failed to satisfy the requirement that the officer have probable cause to believe the object is contraband. Here, as in Bridges, the officer provided no objective facts upon which to base his determination that the bundle in the defendant's rear pocket was contraband. The bare assertion of his subjective belief that the contents of the bundle were "like [he] had felt before in the past that turned out to be marijuana" was inadequate. There are also policy reasons that tend to limit the authority of the officer in circumstances such as these. First, sobriety checkpoints are lawful but must be conducted in such a way that minimizes discretion of officers and limits intrusions into areas protected by the Fourth Amendment. Downey, 945 S.W.2d at 104. Second, the plain feel doctrine must be applied with "exacting limitations." Bridges, slip op. at 18-19.

10

Accordingly, the judgment of the trial court is reversed and the evidence is ordered to be suppressed.  The cause is remanded to the trial court.

_____
Gary R. Wade, Judge

CONCUR:

_____
David H. Welles, Judge


_____
Jerry L. Smith, Judge

11