# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs June 12, 2012

## STATE OF TENNESSEE v. TAVARIS CANTRELL BROOKS

**Appeal from the Circuit Court of Madison County**
**No. 11-182     Donald H. Allen, Judge**

---

**No. W2011-01755-CCA-R3-CD  - Filed June 20, 2012**

---

Tavaris Cantrell Brooks ("the Defendant") pled guilty to one count of possession of less than .5 grams of cocaine with intent to sell and one count of possession of a firearm with intent to employ in the commission of a dangerous felony, and reserved a certified question regarding the legality of the search that led to his arrest.  The State concedes that the trial court should have granted the Defendant's motion to suppress and that his convictions must be reversed.  We agree.  Based on the illegality of the search leading to his arrest, and the necessary exclusion of the resulting evidence, we are constrained to reverse the Defendant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Circuit Court Reversed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER, J., joined.  ROGER A. PAGE, J., not participating.

Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the appellant, Tavaris Cantrell Brooks.

Robert E. Cooper, Jr., Attorney General & Reporter; Jeffrey D. Zentner, Assistant Attorney General; Jerry Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

The Defendant was indicted on one count of possessing .5 grams or more of cocaine with intent to sell; one count of possessing .5 grams or more of cocaine with intent to deliver; and one count of unlawful possession of a gun with intent to go armed during the

commission or attempt to commit a dangerous felony. The Defendant filed a motion to suppress the evidence collected in conjunction with his warrantless search and to dismiss the indictment.

At the hearing on the motion, Deputy Sheriff Andrew Smith testified that he was assigned to the Jackson Madison County Metro Narcotics Unit as an investigator. On November 10, 2010, he and Investigator Cobb were patrolling an area around Lambuth University because there had been "a lot of home burglaries in the area." They "observed several men sitting on the stoop of a house" near an intersection. The officers pulled up, and a few of the men got up and began walking away. These men included the Defendant, whom Deputy Smith did not know at the time.

Deputy Smith called to the Defendant and asked if he would agree to a "field interview." On cross-examination, Deputy Smith acknowledged that he "might have told [the Defendant] to stop or something." Deputy Smith testified that the Defendant agreed to the field interview. At that point, before conducting the interview, Deputy Smith "conducted a frisk search of [the Defendant] for weapons." Deputy Smith explained that he conducted the search for "generalized safety."

During the search, Deputy Smith felt a small caliber handgun in the Defendant's jacket pocket. At that point, Deputy Smith took the Defendant into custody and recovered a "25 caliber Titan semiautomatic pistol" from the Defendant. Deputy Smith stated that, while he was placing the Defendant in handcuffs, the Defendant "spontaneously" told him that the Defendant had cocaine in one of his pockets. Deputy Smith collected the cocaine from the Defendant. The Defendant subsequently was transported to the Criminal Justice Complex.

On cross-examination, Deputy Smith acknowledged that, prior to searching the Defendant, he had not seen a weapon and the Defendant had made no suspicious gestures. The Defendant was not a suspect in any of the burglaries. The encounter occurred at about 11:30 in the morning. Deputy Smith did not observe any criminal activity taking place in the group of men as he and Investigator Cobb approached. However, he described the area in which the men were located as "a high crime area and a high drug area."

The trial court denied the Defendant's motion to suppress on the basis that Deputy Smith conducted the search out of concerns for his safety. The Defendant subsequently pled guilty to one count of possessing less than .5 grams of cocaine with intent to sell and one count of possessing a firearm with intent to employ in the commission of a dangerous felony. In conjunction with his guilty plea, the Defendant reserved the following certified questions:

1. Whether the trial court erred in denying the Defendant's Motion to Suppress the warrantless stop and seizure of his person, pursuant to a field interview, when law enforcement stopped the Defendant due to "burglaries in the area," in violation of the Defendant's Fourth Amendment rights?

2. Whether law enforcement exceeded the scope of a field interview in performing a pat-down of the Defendant, when Defendant had broken no laws in law enforcement's presence?

Because our answer to the second question is dispositive, we decline to address the first certified question.

## Analysis

The State concedes that Deputy Smith's warrantless search of the Defendant was constitutionally infirm and that the evidence arising therefrom must be suppressed. We agree.

This Court long has recognized that "[t]he Fourth Amendment permits a protective frisk where a law enforcement officer has reasonable suspicion that the suspect is armed." State v. Winn, 974 S.W.2d 700, 703 (Tenn. Crim. App. 1998) (citing Terry v. Ohio, 392 U.S. 1, 27 (1968)). See also State v. Bridges, 963 S.W.2d 487, 493 (Tenn. 1997) ("Once a valid stop has been made, police may pat a suspect's outer clothing if the police have a reasonable, particularized suspicion that the suspect is armed."). "Reasonable suspicion is suspicion which is supported by specific and articulable facts." Winn, 974 S.W.2d at 703 (citing United States v. Cortez, 449 U.S. 411, 417 (1981)). When the individual is not suspected of engaging in criminal conduct typically involving the use of a weapon, "'other circumstances' must be present to justify a Terry frisk." Id. at 703-04. Examples of such other circumstances that may justify the type of frisk conducted in the instant case include the following:

[A] characteristic bulge in the suspect's clothing; observation of an object in the pocket which might be a weapon; an otherwise inexplicable sudden movement toward a pocket or other place where a weapon could be concealed; an otherwise inexplicable failure to remove a hand from a pocket; backing away by the suspect under circumstances suggesting he was moving back to give himself time and space to draw a weapon; awareness that the suspect had

previously been engaged in serious criminal conduct; awareness that the suspect had previously been armed; [and] discovery of a weapon in the suspect's possession . . . .

Id. (quoting LaFave, Search and Seizure, § 9.5(a) (3d ed. 1996 & Supp. 1997)).

In this case, Deputy Smith testified that he conducted a pat-down search of the Defendant out of a generalized concern for his safety, but he articulated no circumstances which justified the search. He had not observed the Defendant -- or anyone else -- engaging in any suspicious activity, he observed no indication that the Defendant was carrying a weapon, the Defendant made no suspicious movements, and, because the Defendant was unknown to Deputy Smith, Deputy Smith had no prior knowledge of the Defendant to justify a suspicion that the Defendant was armed. Deputy Smith had no specific reasons for searching the Defendant. Rather, he performed the warrantless search, before he even asked the Defendant any questions, for "generalized safety." However, a generalized concern for safety, without more, would permit a police officer to conduct a pat-down search of every individual he or she stopped. Neither our state nor our federal constitution permits this level of intrusion. As the State acknowledges in its brief, "there is no authority that permits an automatic pat-down incident to a field interview." Therefore, Deputy Smith's search of the Defendant was unconstitutional.

Accordingly, the trial court erred in denying the Defendant's motion to suppress, and all of the evidence obtained as a result of the illegal search must be suppressed. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997); Winn, 974 S.W.2d at 705. Having answered the Defendant's second certified question in a manner that entitles him to relief, we must reverse and vacate the Defendant's convictions and dismiss the charges.

## Conclusion

For the foregoing reasons, we are constrained to reverse the judgments of the trial court and dismiss the charges against the Defendant in this action.

_____
JEFFREY S. BIVINS, JUDGE

-4-