IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 20, 2016 Session

**STATE OF TENNESSEE v. JUNE ANN WASCHER**

**Appeal from the Circuit Court for Sevier County**
**No. AP-11-006-II      Richard R. Vance, Judge**

_____

**No. E2015-00961-CCA-R3-CD – Filed June 6, 2016**

_____

The Defendant-Appellant, June Ann Wascher, entered a guilty plea to driving under the influence (DUI) in exchange for an eleven-month and twenty-nine day probationary sentence, after service of forty-eight hours in jail. As a condition of her plea, Wascher reserved a certified question of law challenging the denial of her motion to suppress, which was based upon an alleged unconstitutional seizure. Following our review, we reverse and vacate the judgment of the trial court and dismiss the case.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed, Vacated and Dismissed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Bryan E. Delius and Bryce W. McKenzie, Sevierville, Tennessee, for the Defendant-Appellant, June Ann Wascher.

Herbert H. Slatery III, Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ron C. Newcomb and Greg Eshbaugh, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

On October 19, 2010, Officer Brad Lowe of the Pigeon Forge Police Department was alerted by his dispatcher to "be on the lookout" (BOLO) for an "impaired driver" in a black Chevrolet truck, bearing license plate number 014XXD and traveling from Gatlinburg towards Pigeon Forge. Minutes later, Officer Lowe identified a truck matching that description in a gas station parking lot. Officer Lowe pulled in behind the truck, but he did not activate his blue lights. As he approached, he observed a man, later

determined to be the owner of the truck, standing next to the driver-side door of the truck and a woman, Wascher, sitting in the driver's seat.

In the police recording of the encounter, which was played at the suppression hearing, Officer Lowe approached the truck, and the man confirmed that he was the owner. Officer Lowe asked "who's driving," to which the man responded, "she is," referring to Wascher. Officer Lowe then inquired, "who was [driving]," to which the owner responded, "she is [sic], since we got here." When Officer Lowe asked the owner if he had driven the truck from Gatlinburg, he responded that he had not. He then asked Wascher if she had driven "the whole way" from Gatlinburg, and she confirmed that she had. Officer Lowe informed the owner and Wascher that he had received "a report of an impaired driver behind the wheel" and indicated he believed the owner to be that driver. The owner again denied that he had been driving, and Wascher repeated that she had been driving "since Gatlinburg." At this point, Officer Lowe obtained both individuals' driver's licenses and went inside the gas station to determine if there was a witness or video recording that could verify who had been driving the truck. Approximately one minute had elapsed between the time Officer Lowe approached the truck to when he received Wascher's license. After Officer Lowe returned from inside the gas station, he questioned Wascher further, and she agreed to perform field sobriety tests. Officer Lowe determined from the tests that Wascher was impaired, and he placed her under arrest for DUI.

Officer Lowe admitted that at the time he took Wascher's license, he "had done nothing to determine that [Wascher] was under the influence," and "had no suspicion . . . that [Wascher] was driving under the influence." Officer Lowe did not suspect Wascher of driving under the influence, "until [he] came back [from inside the gas station.]" "The only thing [he] could tell about [Wascher] was [that] her eyes were watery[.]" Finally, Officer Lowe admitted that the purpose of taking Wascher's driver's license was to prevent her from leaving. Based on this testimony, defense counsel moved to suppress all the evidence arising after Officer Lowe confiscated Wascher's driving license, arguing that the taking of her license constituted a seizure of her person pursuant to State v. Daniel, 12 S.W.3d 420 (Tenn. 2000), which at a minimum requires a reasonable suspicion that the seized individual has committed or is about to commit a crime.

In denying the motion, the trial court reasoned as follows:

I think under the facts of this case, given all the other circumstances, it's a stretch to say that [] taking and holding her license for a temporary period of time to run her record, coupled with all the other information, was a violation of her rights. Again, I think the circumstances taken together gave this Officer reasonable grounds to temporarily intervene to conduct

his investigation. No attempts were made to leave. He used no physical force. He didn't tell anybody not to leave. He didn't tell anybody they were under arrest. So under that set of facts I deny the motion to suppress.

Wascher entered a guilty plea and reserved the following certified question of law:

> Whether the trial court erred in denying the Defendant's motion to suppress when, at the time a law enforcement Officer seized the Defendant by confiscating her drivers' license, no exception to the warrant requirement existed in that there was no probable cause or reasonable suspicion of criminal activity, and no consensual encounter as required by Article I, Section 7 of the Tennessee Constitution and the Fourth and Fourteenth Amendments to the Constitution of the United States.

## ANALYSIS

On appeal, Wascher claims that the trial court erred in denying her motion to suppress any evidence gained as a result of her unlawful seizure. Specifically, she claims that the information contained in the BOLO regarding a possibly intoxicated driver did not give the officer reasonable suspicion to detain her and that none of the information the officer gained during the consensual portion of his interaction with Wascher was supported by reasonable suspicion to detain her. The State responds that "the pre-seizure evidence that the defendant had been driving under the influence, alone, established reasonable suspicion." For the reasons that follow, we agree with Wascher.

**I. Rule 37.** Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure allows an appeal from a guilty plea in certain cases under very narrow circumstances. An appeal lies from a guilty plea, pursuant to Rule 37(b)(2)(A), if the final order or judgment contains a statement of the dispositive certified question of law reserved by the defendant, wherein the question is so clearly stated as to identify the scope and the limit of the legal issues reserved. State v. Preston, 759 S.W.2d 647, 650 (Tenn. 1988). The order must reflect that the certified question was reserved as part of the plea agreement, that the State and the trial judge consented to the reservation and that they are of the opinion that the question is dispositive of the case. Id. An issue is dispositive when this court must either affirm the judgment or reverse and dismiss. State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). If these circumstances are not met, this court is without jurisdiction to hear the appeal. State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996). The certified question presented is dispositive, and all the prerequisites to Rule 37 have been met. Accordingly, we examine the merits of Wascher's question as certified.

**II. Motion to Suppress.** "A trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Williams, 185 S.W.3d 311, 314 (Tenn. 2006) (citing State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). However, this court's review of a trial court's application of the law to the facts is de novo. State v. Day, 263 S.W.3d 891, 900 (Tenn. 2008) (citing Williams, 185 S.W.3d at 315; State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)). Because the pertinent facts in this case are not in dispute, our review is de novo—one of application of the law to the facts. State v. Williamson, 368 S.W.3d 468, 473 (Tenn. 2012).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens from unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. 1, § 7. The purpose of these constitutional protections is to "'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1989) (quoting Camara v. Mun. Court, 387 U.S. 523, 528 (1967)). "The touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 500 U.S. 248, 250 (1991) (citing Katz v. United States, 389 U.S. 347, 360 (1967)). "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." Yeargan, 958 S.W.2d at 629 (citing Coolidge v. New Hampshire, 403 U.S. 403, 454-55 (1971)). Accordingly, the State bears the burden of establishing by a preponderance of the evidence that a warrantless search or seizure is constitutional. See, e.g., State v. Simpson, 968 S.W.2d 776, 780 (Tenn. 1998).

Not all police-citizen encounters implicate constitutional protections. See, e.g., State v. Nicholson, 188 S.W.3d 649, 656 (Tenn. 2006). The Tennessee Supreme Court has recognized three tiers of interactions between law enforcement and private citizens: "(1) a full scale arrest which must be supported by probable cause; (2) a brief investigatory detention which must be supported by reasonable suspicion; and (3) brief police-citizen encounters which require no objective justification." Daniel, 12 S.W.3d at 424 (citations omitted). Of these categories, "only the first two rise to the level of a 'seizure' for constitutional analysis purposes." Day, 263 S.W.3d at 901. "[W]hat begins as a consensual police-citizen encounter may mature into a seizure of the person." Daniel, 12 S.W.3d at 427. A seizure occurs "'when the Officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" Day, 263 S.W.3d at 901-02 (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). The relevant inquiry is "whether, 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed he or she was not free to leave.'" State v. Randolph, 74 S.W.3d 330, 336 (Tenn. 2002) (quoting Daniel, 12 S.W.3d at 425).

The Tennessee Supreme Court has held that a consensual encounter may evolve into a seizure when the Officer retains the citizen's driver's license because a reasonable person would not leave without his or her identification. Daniel, 12 S.W.3d at 427. The police must have either probable cause or reasonable suspicion at the time the individual is seized. See, e.g., Randolph, 74 S.W.3d at 338. Whether reasonable suspicion existed in a particular case is a fact-intensive and objective analysis. State v. Garcia, 123 S.W.3d 335, 344 (Tenn. 2003). There is no dispute in this case that Wascher was seized when Officer Lowe confiscated her driver's license. The basic question is whether the seizure was supported by reasonable suspicion of ongoing criminal activity.

One well-established exception to the warrant requirement allows for a brief investigatory stop or detention where the officer has "a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997) (citing Terry, 392 U.S. at 21). However, the facts forming the basis of the officer's suspicion do not have to be based on the officer's personal observations and can come from information by another law enforcement officer or a citizen. Simpson, 968 S.W.2d at 783. The Tennessee Supreme Court recently restated the law regarding reasonable suspicion as follows:

> Reasonable suspicion must be supported by more than the officer's "inchoate and unparticularized suspicion or 'hunch,'" Terry, 392 U.S. at 27; however, "'reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause . . . [and] can arise from information that is less reliable than that required to show probable cause.'" State v. Pulley, 863 S.W.2d 29, 32 (Tenn. 1993) (quoting Alabama v. White, 496 U.S. 325, 330 (1990)).

> Trial courts must examine the totality of the circumstances when evaluating whether an officer has established the requisite level of suspicion to justify a Terry stop. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000). These circumstances include an officer's observations, information from other law enforcement personnel or agencies, information from citizens, known patterns of criminal offenders, or deductions based upon experience. State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). When evaluating the reasonableness of the police officer's suspicion, the nature of the crime suspected may be a factor. See State v. Winn, 974 S.W.2d 700, 703 (Tenn. Crim. App. 1998) ("A frisk has been upheld as reasonable when the suspected crime might typically involve the use of a weapon . . . [such that] an officer may reasonably infer that a weapon might be in the possession of the suspect.").

State v. Moats, 403 S.W.3d 170, 178-79 (Tenn. 2013), overruled on other grounds by State v. McCormick, -- S.W.3d -- , No. M2013-02189-SC-R11-CD, 2016 WL 2742841, at *7-8 (Tenn. May 10, 2016).

An anonymous tip can serve as a basis for an officer to detain a driver if the tip satisfies the Aguilar-Spinelli test, which requires a showing of (1) the basis of the informant's knowledge and (2) the informant's credibility. State v. Hanning, 296 S.W.3d 44, 49 (Tenn. 2009) (citing Day, 263 S.W.3d at 903). However, "[a]n anonymous tip alone seldom demonstrates sufficient reliability []" to support an officer's detention based on reasonable suspicion of ongoing illegal activity. Navarette v. California, 134 S. Ct. 1683, 1685 (2014) (citing White, 496 U.S. at 330). To be valid, the tip must be, "reliable in its assertion of illegality, not just in its tendency to identify a determinate person." Williamson, 368 S.W.3d at 477 (citing and quoting Florida v. J.L., 529 U.S. 266, 270 (2000)). Any deficiencies as to these requirements can be cured by an officer's independent investigation. Id. (citing State v. Wilhoit, 962 S.W.2d 482, 487 (Tenn. Crim. App. 1997)).

In State v. Hanning, 296 S.W.3d 44 (Tenn. 2009), an anonymous caller reported that a black "18-wheeler" was being driven "recklessly" on the interstate and had taken the "Highway 72 exit." Hanning, 296 S.W.3d at 50. A BOLO was issued with that information, and shortly thereafter, an officer discovered a truck matching the description given by the caller parked in the emergency lane of the Highway 72 exit ramp. Id. Our supreme court determined that the tip itself demonstrated the informant's basis of knowledge because the officer found a truck matching the description in the tip "[w]ithin mere minutes of receiving the dispatch." This was sufficient to establish the caller's basis of knowledge because the temporal proximity of the BOLO to the discovery of the truck suggested that the tipster was reporting the reckless driving as it occurred. Id. Additionally, the tipster's accurate description of the truck as to its type, color, location, and direction of travel was sufficient to establish the tipster's reliability. Id. The truck was also "parked in the emergency lane of the exit ramp" and while not illegal, the location of the truck was "sufficiently unusual" and more than an "inchoate, and unparticularized suspicion or hunch" that the driver had been operating his vehicle recklessly or drunkenly, had been seen, and stopped at the soonest opportunity in an attempt to avoid detection. See id. at 49-50. Finally, the court emphasized that "the content of the tip is of critical significance." Id. at 54; see also Pulley, 863 S.W.2d at 32 (recognizing that, in assessing the reasonableness of a stop, "[t]he content of the tip is also a crucial factor and, in particular, the level of danger that the tip reveals"). It cautioned that "the degree of corroboration that was sufficient to establish reliability in this case may not be sufficient where the nature of the activity reported and any associated imminent danger cannot be reasonably inferred from the information conveyed by the informant." Hanning, 296 S.W.3d at 54.

In a 5-4 split-decision issued after Hanning, the United States Supreme Court filed another opinion involving the Fourth Amendment and anonymous tips, Navarette v. California, 134 S. Ct. 1683, 1685 (2014) (Scalia, J., dissenting; Ginsburg, Sotomayor, and Kagan, JJ., join). Relying primarily upon Alabama v. White, 496 U.S. 325 (1990), and Florida v. J. L., 529 U.S. 266 (2000), the majority in Navarette, concluded that under the totality of the circumstances in that case, an anonymous tip regarding reckless driving gave police reasonable suspicion that justified a traffic stop. In Navarette, after a 911 caller reported that a vehicle had run her off the road, a police officer located the vehicle she identified during the call and executed a traffic stop. Id. at 1687. A subsequent search of the truck bed revealed thirty pounds of marijuana. The defendant was arrested and later moved to suppress the evidence, arguing that the traffic stop violated the Fourth Amendment because the officer lacked reasonable suspicion of criminal activity. Id.

The majority in Navarette began by determining "whether the 911 call was sufficiently reliable to credit the allegation that petitioners' truck 'ran the [caller] off the roadway.'" Id. at 1688. It then engaged in a weighing analysis of several factors in concluding that the anonymous call bore adequate indicia of reliability. These factors included: (1) eyewitness knowledge, i.e., the caller necessarily claimed to have personally observed the alleged dangerous driving; (2) contemporaneous reporting, i.e., the caller reported the incident soon after it occurred; and (3) the caller's use of the 911 emergency dispatch system, which allows for identifying and tracing callers, thus providing some safeguard against false reports. Id.; see also State v. Rodriguez, 852 N.W.2d 705, 712-15 (Neb. 2014). After determining that the anonymous tip was a reliable report of having been run off the road, the Court stated that "[e]ven a reliable tip will justify an investigative stop only if it creates reasonable suspicion that 'criminal activity may be afoot.'" Navarette, 134 S. Ct. at 1690. It then proceeded to analyze whether the anonymous caller's tip created a "reasonable suspicion of an ongoing crime such as drunk driving as opposed to an isolated episode of past recklessness." Id. Although the majority and the dissent disagreed on whether the reported reckless driving was proof of the ongoing crime of drunk driving, they agreed that proof of an ongoing crime, in and of itself, was necessary to support reasonable suspicion. Id. at 1690, 1695. The Court ultimately concluded that the reported behavior of the defendant driver, viewed from an objective standpoint, amounted to a reasonable suspicion of drunk driving. Id.

We now apply the above authority to the facts and circumstances of this case. In order to determine whether Officer Lowe had reasonable suspicion to detain Wascher, we must first resolve whether the anonymous tip was sufficiently reliable to credit the caller's allegation that Wascher's truck was being driven by an "impaired driver." Although the officer confirmed details provided by the caller including the type, color, area of travel, and license plate number, these are factors that tend to identify a

determinate person, not illegal activity. In other words, the information provided by the caller and corroborated by Officer Lowe was merely a description of the truck and its general location. We recognize that generally "an anonymous 911 call reporting an ongoing emergency is entitled to a higher degree of reliability and requires a lesser showing of corroboration than a tip that alleges general criminality." United States v. Simmons, 560 F.3d 98, 105 (2d Cir. 2009); see also State v. Luke, 995 S.W. 2d 630, 636 (Tenn. Crim. App. 1998). However, the record in this case is silent as to how the information from the caller was conveyed to the dispatcher. We do not know whether the information was in fact provided by an anonymous tip or by the emergency 911 system. Navarette, 134 S. Ct. at 1689 (noting that use of the 911 emergency system is a factor to be weighed in favor of the caller's veracity). Indeed, the dispatch communication to Officer Lowe provided no details showing how the caller knew that the driver was impaired. Officer Lowe was told only to "be on the look out" for a possible "1049 driver," the numeric code used for impaired drivers. Defense counsel objected to the characterization by the dispatcher but was overruled by the trial court. We decline to presume the basis of the dispatcher's description of the driver as "impaired." We do not know whether the caller observed Wascher engaged in reckless driving or whether the caller observed Wascher get into her truck and drive after consuming alcoholic drinks at a local tavern. The content of the tip also does not include a specific allegation that the truck was weaving, crossing the center line, or driving in the median: behavior which is "paradigmatic manifestations of drunk driving." Navarette, 134 S. Ct. at 1691; Hanning, 296 S.W.3d at 54.

In addition, Officer Lowe observed the truck parked at a gas station, a nondescript location which does not add anything to the reliability of the tip in its assertion of illegality. The tip was also not specific with regard to where the criminal activity occurred. The caller claimed that the truck was traveling from Gatlinburg to Pigeon Forge, a distance of approximately 7.5 miles. See State ex rel. Leach v. Avery, 387 S.W.2d 346, 347 (Tenn. 1964) (stating that a court may take judicial notice of the distances between cities). Because we do not have any details showing how the caller was aware of the "impaired" status of the driver, we are unable to reasonably infer whether there was any imminent danger involved. Hanning, 296 S.W.3d at 54. We are likewise unable to determine whether the tipster had firsthand knowledge of ongoing criminal activity. Navarette, 134 S. Ct. 1683, 1689 (noting that eyewitness knowledge of the alleged dangerous driving weighs in favor of the tip's reliability). In our view, the anonymous tip in this case bore far weaker indicia of reliability than in Hanning or Navarette, both of which were "close cases." As such, we conclude that the tip provided in the BOLO to Officer Lowe was a bare-bones, conclusory allegation of illegality. Accordingly, it did not bear sufficient indicia of reliability for the officer to credit the caller's account of ongoing criminal activity, which is necessary to support a finding of reasonable suspicion.

Because the tip, standing alone, did not provide sufficient indicia of illegality to warrant an investigatory stop, we must now determine whether the tip's deficiencies were cured by the officer's independent observations prior to the seizure. Upon review, we conclude that the information gleaned from the officer's pre-seizure observations of Wascher did not cure the defects of the anonymous tip.

Approximately one minute elapsed between Officer Lowe's arrival on the scene and his detention of Wascher by seizing her driver's license. The State claims that during this pre-seizure interaction, Officer Lowe established a reasonable suspicion that Wascher had been driving under the influence because she accompanied "the owner of the truck [who] was standing inside the open driver's side door and was visibly intoxicated." We are unpersuaded by the State's argument. The presence of another, clearly intoxicated individual in the company of Wascher has no probative value to an officer's determination of whether Wascher, herself, was impaired. To hold otherwise would subject every designated driver in Tennessee to an investigatory detention. Wascher was in the driver's seat of the truck when Officer Lowe initiated the stop. At every request, Wascher and the owner of the truck admitted that Wascher had been driving.[1] The only observation Officer Lowe made prior to detaining Wascher was that she had "watery eyes." Significantly, Officer Lowe candidly admitted at the suppression hearing that he did not suspect Wascher of being impaired when he took her license.

Under these facts and circumstances, Officer Lowe was entitled to continue his investigation in a consensual manner. He did not, however, have a lawful basis upon which to seize Wascher by taking her driver's license. We therefore hold that Officer Lowe did not have reasonable suspicion sufficient to justify the detention in this case because the tip was not reliable in its assertion of illegality, J.L., 529 U.S. at 272, and his one-minute interaction with Wascher prior to seizing her did not remedy this defect. Accordingly, we reverse the decision of the trial court and dismiss the charges.

## CONCLUSION

Upon review, we reverse and vacate the judgment of the trial court and dismiss the case.

_____
CAMILLE R. McMULLEN, JUDGE

---

[1] The State characterizes Wascher as evasive in answering the officer's question as to who was driving the vehicle. After multiple viewings of the recording of this interaction, we simply disagree with the State's characterization.