DAN UDELL CLOYD

*v.*

STATE OF TENNESSEE

(*Knoxville,* September Term, 1957.)

Opinion filed December 6, 1957.

Ralph E. Vineyard, Knoxville, for plaintiff in error.

James M. Glasgow, Assistant Attorney General, for the State.

Mr. Justice Tomlinson delivered the opinion of the Court.

The appeal of Cloyd is from a conviction of violating T.C.A. sec. 39-3001 reading as follows:

> "39-3001. Obscene books, ballads or pictures—Misdemeanor.—If any person print, publish, import, sell or distribute any book, pamphlet, ballad, or printed paper containing obscene language or obscene prints, pictures, or descriptions, manifestly tending to corrupt

the morals, or introduce the same into any family, school, or place of education, or have the same in his possession for the purpose of loan, sale, exhibition, or circulation, or with intent to introduce the same into any family, school, or place of education, he shall be guilty of a misdemeanor.''

It was amended subsequent to the alleged commission of this offense by a 1957 Act, with which we are not here concerned.

A Captain in the Inspector General's Department of the United States Army saw some obscene pictures and vile printed matter in the possession of some person in his command. As a result, this Captain, whose name was Fuhr, went to a public place of business in Knoxville known as Lockett's. He expressed a wish to buy some such pictures and literature. His testimony is that after some hesitation Cloyd, in charge of the store at the time, sold him six booklets containing pictures and printed matter, and for each of which six booklets he paid this clerk $2. The next day he took them to the Safety Director for Knoxville, turned them over to him and was reimbursed the $12 paid for them the day before. They are in evidence.

This Captain positively identifies plaintiff-in-error as the person who sold him these booklets. Cloyd denies this, and in support of that denial says that his hours on duty did not commence until 4:00 P.M. each day, whereas this Captain testified that he bought these booklets at 1:00 P.M. Cloyd says he was not there at 1:00 P.M. He is corroborated by this by his employer, Lockett. The bill of exceptions is in narrative form, and rather skimpy. But it is true that the foregoing sharply drawn

issue of fact was decided by the jury in favor of the credibility of the Captain. Its finding on this score is final here.

■ One ground of the motion for a new trial is that "certain evidence was improperly submitted to the jury". Assignment of error No. 2, relying upon the foregoing ground of a motion for a new trial, is that the Trial Court erred in permitting introduction of certain evidence of a subsequent raid some weeks after the foregoing alleged sale.

We cannot consider this assignment of error because Rule 14(5), 185 Tenn. 868-869 provides that errors in the admission of testimony will not constitute a ground for reversal "unless it affirmatively appears that same was specifically stated in the motion made for a new trial in the lower court * * *." The statement in the motion for a new trial that "certain evidence was improperly submitted to the jury" is not by any means a specific statement of the evidence objected to. Read *Ferguson v. State,* 166 Tenn. 308, 311, 61 S.W.2d 467.

■ Based on the fact that the testimony of Captain Fuhr is not corroborated by other testimony, it is insisted that the conviction is not supported by evidence.

This insistence overlooks the fact that plaintiff-in-error was violating the law independent of Captain Fuhr. He was possessing this obscene literature for the purpose of sale, exhibition, circulation, etc. Applicable here is the rule last repeated, perhaps, in *Goins v. State,* 192 Tenn. 32, 39, 237 S.W.2d 8, 12, as follows:

"The purpose of the detective or governmental agent is not to solicit the commission of, not to create,

an offense, but to ascertain if the accused is engaged in an unlawful business, or to entrap the defendant in the act of committing an offense which he has reasonable grounds to believe the accused has commenced, or is about to commence.''

Another assignment of error is that T.C.A. sec. 39-3001 violates the 14th amendment to the Federal Constitution in that it is, so the brief says, ''a hodge podge'' of an uncertainty. By way of argument, then, the brief inquires:

''Where are the lines drawn? What is obscene? What must be proven to show that something, if anything, manifestly tends to corrupt morals? What is moral and what is not moral? The loosely drawn statute will not meet the requirements of statutory construction let alone the constitutionality.''

That is a criticism directed, not to the constitutionality of the code section, but to the question of whether the facts established by evidence in any given case fall within the prohibitions of that code section. But a complete answer to the question put as to what is obscene or what manifestly tends to corrupt morals, or as to what is moral or immoral appears in *Abbott v. State*, 163 Tenn. 384, 386, 43 S.W.2d 211, where this Court said in response to a similar problem that:

''The common sense of the community as well as the sense of decency, propriety and morality, is sufficient to apply those statutes to each particular case and point out what particular conduct is rendered criminal by them.''

Plaintiff's-in-error brief quotes from a 1957 decision of United States Supreme Court in *Butler v. State of Michigan,* 352 U.S. 380, 77 S.Ct. 524, 526, 1 L.Ed.2d 412, wherein that Court in allegedly striking down a Michigan statute is quoted as saying this:

"We have before us legislation not reasonably restricted to the evil with which it is said to deal. The incidence of this enactment is to reduce the adult population of Michigan to reading only what is fit for children."

The Tennessee statute is not reasonably capable, in the opinion of this Court, to such a construction. The purpose of the Tennessee Statute is to prevent a common nuisance, such pictures and publications being exactly that. See 67 C.J.S. Obscenity sec. 17 p. 39. In so far as this Court is aware there is nothing in the 14th amendment to the Federal Constitution to prevent state legislatures from taking such action.

The pictures in the booklets kept for sale, etc., and sold by Cloyd to Captain Führ were photographs of naked men and women engaged not only in acts of sexual intercourse, but engaged in various unnatural sexual acts too reprehensible to put in print. The writing in these booklets was with reference to such acts and as vile as a depraved mind could conjure up. To say that a statute prohibiting the possession, sale, distribution, etc. of such booklets is a statute in violation of any constitutional amendment is to assert that which does not appeal to reason.

Judgment affirmed.