Kenneth Dale SMART, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Aug. 17, 1976.

Certiorari Denied by Supreme Court
Oct. 25, 1976.

Edward G. Thompson, Public Defender, Walker Gwinn, Chief App. Counsel, Memphis, for appellant.

R. A. Ashley, Jr., Atty. Gen., Robert A. Grunow, Asst. Atty. Gen., Nashville, James D. Wilson, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

RUSSELL, Judge.

This is an appeal by Kenneth Dale Smart from his conviction for second degree burglary. Sentence was set at not less than five nor more than ten years in the penitentiary.

Trial was conducted in Division VI of the Criminal Court of Shelby County. A co-defendant, Charles Matlock, was convicted of receiving stolen property and was given three years, and did not appeal.

This crime, a daylight home burglary, involved the theft of about $2,500.00 worth of property, consisting of a pocket calculator, an electronic calculator, a class ring, a rifle, a trumpet, tape recorders and stereo equipment.

The rifle, tape recorders and stereo equipment were first located by an alert Memphis policeman before they were even recorded on the police computer as stolen. The burglary occurred after 7:20 a.m. on October 22, 1974. At about 10:50 a.m. Officer Hymon drove past an automobile parked at a service station, with the trunk up and speakers, tape players and other items visible in the trunk. The three male whites who were at the trunk looked furtively at the officer, closed the trunk and immediately moved away. Officer Hymon brought his car back to the scene, and according to the officer, obtained Appellant Smart's permission to view the contents of the car trunk. Smart told the officer that the car and trunk contents belonged to his girl-friend, and opened the trunk for the officer, who took down the serial numbers of the articles. Upon calling headquarters and learning that no theft report was of record, the officer left the scene, but first obtained the identities of the co-defendants. Subsequently, when the detailed burglary complaint was processed, a memo on the above encounter filed by Officer Hymon with the Burglary Division led to the subsequent arrest of the co-defendants. At that time the contraband had been moved to co-defendant Matlock's car.

The first assignment of error says that the verdict of the jury was against the greater weight and preponderance of the evidence. Within a matter of hours after the burglary in question the appellant had a substantial amount of the stolen property in the trunk of his automobile. This possession was not satisfactorily explained. Smart did not take the stand, nor did his co-defendant; and Smart's only witness, an ex-convict named Ingram, claimed that he saw a black man trying to sell the stolen property on the morning in question. This witness took the Fifth Amendment on a query about a prior forgery. We hold that the convicting evidence is legally sufficient. It is settled that the unexplained possession of property recently stolen in a burglary

will support a conviction for that burglary. *Brown v. State,* Tenn.Cr.App., 489 S.W.2d 855 (1972); *Capps v. State,* Tenn.Cr.App., 523 S.W.2d 213 (1974) (Judge Galbreath dissenting); *Cooke v. State,* 3 Tenn.Cr.App. 533, 464 S.W.2d 324 (1970); *Pruitt v. State,* 3 Tenn.Cr.App. 256, 460 S.W.2d 385 (1970); *Wyatt v. State,* 4 Tenn.Cr.App. 1, 467 S.W.2d 811 (1971).

The next assignment of error presents a *Bruton-like* question, but in an unusual context. A police officer, Deyling, arrested the co-defendant, Matlock, at a time when Matlock was in possession of a substantial quantity of the stolen property. Matlock made certain statements to the officer which tended to exculpate Matlock from the actual burglary, but implicated Smart. In a jury-out hearing the trial judge carefully advised the State that it could not introduce Matlock's statement implicating Smart, and the prosecuting attorney agreed and avoided doing so. However, counsel for Matlock insisted that he, on behalf of Matlock, had the right to ask the officer on cross-examination about the statement, and was permitted to do so, over the objection of Smart's attorney. The pertinent portion of the cross-examination was:

"Q. What did he tell you about this merchandise that you later found?

"A. That, well, he stated that he had some of the merchandise in the trunk of his car at that time.

"Q. Did he tell you where he received this merchandise? How he received this merchandise?

"A. As I recall, he stated that he had received it at the service station there.

"Q. Did he tell you from whom he received the merchandise?

"A. Yes, sir, he did.

"Q. And who was that?"

Mr. Roach (counsel for Smart): "Objection, Your Honor."

The Court: "Alright, I'm going to overrule the objection and on the, Mr. Roach, I'm going to allow him to answer and then I'm going to instruct the jury about the evidence, but I'm going to let you answer that question."

"A. He stated that he had received it from Kenneth Smart."

The Court: "Now, ladies and gentlemen of the jury, I knew that was going to be the answer because of some of the earlier investigation and questions of law that I've been conducting here. Now, I'm allowing that to be an answer by the officer in response to the question on cross-examination by Mr. Matlock's attorney, but I'm instructing the jury that you're not to consider that as evidence in any way against Mr. Smart, the other defendant. In other words, anything that's said out of Court or is reportedly said out of Court by Mr. Matlock about Mr. Smart's involvement in this case is not evidence and you may not so consider it as evidence against Mr. Smart. You understand? That's, but, but I'm allowing the question in response to cross-examination to be answered, but you cannot consider it as going to the guilt or innocence of Mr. Smart. Do you all understand that? I'll give you further instructions at the conclusion of the case. I wanted to make sure that you understand it at the time you heard it."

"Q. Officer, did he state to you that he had bought these items or rather was he holding these items for Kenneth Smart?

"A. That he was just holding these items for him.

"Q. Did he actually say to you who the items belonged to? Did he say Kenneth Smart or a girlfriend of Kenneth Smart?

"A. A girlfriend of Kenneth Smart's.

"Q. Did he give you a reason why he was holding them?

"A. He stated that he was holding these items until Kenneth Smart could find an apartment."

The trial judge, true to his word, reiterated in his charge that the jury could consider Matlock's statement only as against Matlock, and not against Smart.

The teaching of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476

(1968), is that the prosecution cannot introduce the confession of a non-testifying co-defendant if it implicates the defendant, even though the jury is instructed not to consider the confession as to the non-confessor implicated therein.

■ The case at bar is readily distinguishable. The State did not introduce the statement of co-defendant Matlock, but Matlock brought it out on cross-examination. The statement is not very incriminating of Smart, ending by saying that the property belonged to Smart's girl-friend. And, most importantly, the jury already had before it competent evidence that Smart had the property in his possession shortly after the crime, before it was found in Matlock's car, and then contended himself that it belonged to his girl-friend, so this evidence was at most cumulative of competent evidence. Furthermore, the trial judge carefully twice instructed the jury not to consider the statement as to Smart. In *Bruton* itself, it is said:

"Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions; instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. * * * It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. * * *"

The record does not reflect that a severance was sought by either co-defendant. The assignment is overruled. Any error is harmless in the context of this case.

■ The next assignment of error is:

"The Court erred in charging the jury statutes pertaining to parole eligibility, good, time and honor time." It is not said in the assignment why this was error. This plaint is stated in the Motion for a New Trial in these words:

"8. The Court erred in charging the jury statutes pertaining to parole eligibility, good time and honor time, all of which is prejudicial to the accused and irrelevant, immaterial to the charges and guilt or innocence of the accused. This is an administrative function and not a judicial one."

Counsel for appellant has filed a supplemental brief, strongly questioning our opinions (as yet unreported) in the cases of *Jackson v. State,* filed at Jackson on May 6, 1976, Tenn.Cr.App., 539 S.W.2d 337, as was *Harold Powell and Sylvester Hayes v. State.* Certiorari was denied by our Supreme Court in the *Jackson* case on July 6, 1976. These opinions require that a viable *Farris* question [*Farris v. State,* Tenn., 535 S.W.2d 608 (1976)] be one that was identifiably called to the attention of the trial judge. Prior to the decision in *Farris,* trial judges were required, under the provision of T.C.A. § 40–2707, to give the complained-of charge. It was mandatory. What the Supreme Court ultimately held, three to two, was that the statute was the product of an Act that was broader than its caption, in violation of Art. II, Sec. 17 of the Tennessee Constitution. A majority of the Court put down claims that it violated the separation of powers constitutional provision, or that it was unconstitutionally vague.

It is fundamental to appellate practice that errors must be called to the attention of the trial judge with as much specificity as the alleged error permits. *Caruther's History of a Lawsuit,* Eighth Edition, § 421, p. 478, states the rule:

"The grounds stated in the motion [for a new trial] are to be as specific and certain as the nature of the error complained of will admit. An assignment, such as, 'error in admission and exclusion of evidence' has been condemned as too general. * * * A similar rule prevails in the appellate courts and those courts will look to the grounds stated in the motion in granting or refusing a new trial."

Rules 14(5) of the Supreme Court (and this Court) requires specificity in the trial court. The case of *Ferguson v. State,* 166 Tenn. 308, 61 S.W.2d 467, 468 (1933), holds that the grounds relied on must be specified with reasonable certainty, quoting from an

earlier case: " 'The grounds set out in the motion should be as specific and certain as the nature of the error complained of will permit' ". See also *Nunn et al. v. Walker,* 186 Tenn. 685, 212 S.W.2d 665 (1948) and *Cloyd v. State,* 202 Tenn. 694, 308 S.W.2d 467 (1957).

The motion for a new trial, and the assignment of error in this Court, state nothing except that it was error for the trial judge to do what a facially valid statute required him to do. The defect which the Supreme Court struck the statute down upon would not even have been apparent from a study of the codified statute, but would have required a review of the original Public Act. We hold that the trial judge did not err in overruling this completely general attack upon the statute. As the Supreme Court said in *Farris* (who, incidentally, was not granted relief, for want of a proper assignment):

> "This Court operates on the basis of errors assigned for our consideration and we have neither the disposition nor the duty to search the record and decide cases and controversies on the basis of unassigned error."

Nowhere in this motion for a new trial or assignment of error does it even say that the pertinent statute is unconstitutional, much less state the proper ground. *Farris* holds that retrospective relief is to be given in only those cases "wherein appropriate assignments have been made". We hold that this is not such a case.

▮ It is said that the trial court erred in admitting into evidence the information obtained from the search of defendant's vehicle by Officer Hymon. The theory of the State was that this was a consent search. The trial judge held an admissibility hearing and concluded that the search was by lawful consent. The evidence does not preponderate against that finding, given the trial judge's acceptance of the State's proof as true. *Echols v. State,* Tenn.Cr.App., 517 S.W.2d 18 (1974).

Finally, it is contended that a line-up was improperly conducted and the subsequent in-court identification by Officer Hymon tainted thereby. The trial judge conducted a hearing and found that the line-up was properly held. We agree, and the assignment is overruled.

Affirmed.

WALKER, P. J., concurs.

GALBREATH, Judge (dissenting).

I respectfully dissent for two reasons.

The first, touching on the inference the majority holds permissible based on the possession of property recently stolen in a burglary, is discussed in great detail in my dissent in *Capps v. State.* It would be well, in my opinion, if our Supreme Court would pass on this issue.

Secondly, relative to the Matlock statement implicating appellant, it seems to me that the teaching of *Bruton* is that an accused must be afforded his constitutionally protected right of confronting the witness against him. This should in no way depend on whether the hearsay evidence is offered by the State or on behalf of a co-defendant as the majority seems to infer. While I agree with Judge Russell that the overall effect of the disputed testimony was harmless, I would unequivocally hold that its admission was error.