IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 11, 2001

## STATE OF TENNESSEE v. LIVERGEST MICKENS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-06311   Joseph B. Dailey, Judge**

---

**No. W2000-03010-CCA-R3-CD  - Filed January 8, 2002**

---

Defendant, Livergest Mickens, was convicted by a Shelby County jury of aggravated burglary, and theft of property under five hundred dollars in value.  On appeal, Defendant challenges the sufficiency of the evidence to sustain the convictions.  After a review of the record and applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, and ROBERT W. WEDEMEYER, JJ., joined.

A.C. Wharton, Jr., District Public Defender; Michael Johnson, Assistant Public Defender; and Garland Erguden, Assistant Public Defender, Memphis, Tennessee, for the appellant, Livergest Mickens.

Paul G. Summers, Attorney General and Reporter; Laura McMullen Ford, Assistant Attorney General; William L. Gibbons, District Attorney General; and Dan Byer, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## BACKGROUND

On November 21, 1998, Defendant was seen entering the garage of a home located at 4423 Alicia Drive, in Shelby County.  The home belonged to Lawyer Turner, who lived at the residence with his son, Lionel Turner, neither of whom was at home that evening.  According to the testimony of their neighbor, Mr. Richard Shekey, a black man entered the garage alone at around 10:00 p.m., and left his truck idling on the street in front of Mr. Turner's garage and driveway.  The truck was described as a very old, light-toned Chevy truck.  The perpetrator wore dark clothing and a hat that was "cocked."  He was illuminated by the light from the open garage door.  Within a few minutes, the same person was seen exiting the garage carrying two bicycles, one on each arm.  As he exited, another neighbor, James Van Ostran, who was watching from his door, yelled at the perpetrator,

"hey, stop." Upon hearing this, the man hurried toward his truck, threw the bicycles in the back, and drove off down the street. Mr. Van Ostran, joined by Mr. Shekey, ran after the pickup and chased it down the street. They also called 911 and gave descriptions of the suspect, the vehicle, and the stolen property.

While en route to respond to the complaint, Officer David Ballard passed a truck fitting the description traveling in the opposite direction of the crime scene. He turned around and stopped the vehicle, got the driver out and identified him as Defendant. Defendant also matched the description of the burglary suspect. The officers detained Defendant until Mr. Shekey and Mr. Van Ostran arrived, within fifteen minutes of the theft. They individually identified the truck, the bicycles and the Defendant as the burglar by saying, "that's him, without a doubt." The bicycles were returned to Mr. Turner. Mr. Turner testified that at the time that the bicycles were stolen, one was two years old and the other was one year old. Originally, one bicycle cost $250.00, and the other cost $189.00, but Mr. Turner stated that both were worth less when stolen because of normal wear and tear. Mr. Turner also testified that the garage is attached to his home. Finally, Mr.Turner testified that he did not know Defendant, did not have any dealing with him, and did not give Defendant permission to enter his garage or take the bicycles.

Defendant was charged in three separate indictments with one count of aggravated burglary and two separate counts of theft of property over $500.00. The first theft count states that the defendant "did unlawfully and knowingly obtain property, to wit: Two (2) bicycles, all over the value of five hundred dollars but under the value of one thousand dollars". The second count states that the defendant "did unlawfully and knowingly exercise control over property, to wit: Two (2) bicycles, all over the value of five hundred dollars but under the value of one thousand dollars". At the close of the evidence, both charges of Class E felony theft of property were amended by the trial court to misdemeanor theft of property charges under $500.00, to reflect the proof of the property's value. The jury returned guilty verdicts on the aggravated burglary charge and both theft of property charges, and the trial court approved the verdicts. Although the record does not contain a specific order, apparently the theft of property conviction in Count three was merged with the conviction in Count two. There is no judgment regarding Count three in the appellate record. Merger of the two theft convictions would be mandatory. State v. Epps, 989 S.W.2d 742 (Tenn. Crim. App. 1998).

**ANALYSIS**

Defendant contends that the evidence was insufficient to sustain the jury convictions for aggravated burglary and theft of property. He argues that the State failed to prove beyond a reasonable doubt that Defendant burglarized Mr. Turner's garage and that he intended to deprive Mr. Turner of the bikes. We find that the state has met its burden.

The burden rests with Defendant to prove that the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). We must review the evidence in the light most favorable to the prosecution to determine if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v.

Keough, 18 S.W.3d 175, 180-81 (Tenn. 2000) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). The trier of fact resolves all questions concerning witnesses' credibility, the weight and value to be given the evidence, and all factual issues; the evidence will not be reweighed or reevaluated. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). A guilty verdict in criminal actions shall be set aside on appeal only if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt. Tenn. R. App. P. 13(e).

The State, on appeal, is entitled to the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. See State v. Keough, 18 S.W.2d at 181 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)); State v. Harris, 839 S.W.2d 54, 75 (Tenn.1992); State v. Herrod, 754 S.W.2d 627, 632 (Tenn. Crim. App. 1988). The standard for appellate review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of both. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

First, Defendant alleges that the evidence of his identity is such that a rational trier of fact could not find beyond a reasonable doubt that he was the perpetrator that burglarized Mr. Turner's garage and stole the two bicycles. We respectfully disagree.

The Defendant was indicted and convicted based on Tennessee Code Annotated section 39-14-403, which defines aggravated burglary as "burglary of a habitation as defined in §§ 39-14-401 and 39-14-402." A habitation is described as "any structure, including buildings, module units, mobile homes, trailers, and tents, which is designed or adapted for the overnight accommodation of persons [and] . . . [i]ncludes each separately secured or occupied portion of the structure or vehicle and each structure appurtenant to or connected with the structure or vehicle ". Tenn. Code Ann. § 39-14-401 (Supp. 2000). According to the Sentencing Commission Comments of Tennessee Code Annotated section 39-14-403, a "habitation also includes garages and other outbuildings that are 'separately secured and occupied portions' of a habitation". Burglary is defined as:

> **39-14-402. Burglary-** (a) A person commits burglary who, without the effective consent of the property owner:
> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;
> (2) Remains concealed, with the intent to commit a felony, theft or assault, in a building;
> (3) Enters a building and commits or attempts to commit a felony, theft, or assault; or
>
> (4) Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

Tenn. Code Ann. § 39-14-402 (1997).

The evidence, when viewed in the light most favorable to the state, was sufficient to prove that the Defendant was guilty of burglary. While the Defendant argues that the eyewitnesses' identification of him was insufficient because they only saw a "silhouette" or "profile" and could only describe him as a black man wearing a "cocked hat", testimony revealed that the two eyewitnesses were able to get a good look at the truck and the driver as he drove away from the scene. Officer Ballard also described the witnesses' identification of Defendant as "pretty positive" because they immediately identified Defendant as the burglar and thief "without a doubt." Also, the defendant was apprehended within minutes and was stopped close to the scene, driving a truck that matched the witnesses' description, in possession of the stolen property. The "unexplained possession of recently stolen property is sufficient evidence to sustain a burglary conviction." Smart v. State, 544 S.W.2d 109, 110-11 (Tenn. Crim. App. 1976). The trier of fact must determine whether the State carried its burden of proof as to the defendant's identity. See State v. Vaughn, 29 S.W.3d 33, 40 (Tenn. Crim. App.1998). There was overwhelming evidence to prove Defendant was the perpetrator beyond a reasonable doubt.

Secondly, the defendant contends that the State failed to prove beyond a reasonable doubt that he intended to "deprive" the victim of the two bicycles and that the evidence is insufficient to meet the high standard in Jackson. We respectfully disagree.

To obtain a conviction for theft, the State must prove (1) the defendant knowingly obtained or exercised control over property; (2) the defendant did not have the owner's effective consent; and (3) the defendant intended to deprive the owner of the property. Tenn. Code Ann. § 39-14-103 (1991).

This issue concerns the third element only, namely, whether Defendant had the requisite intent to deprive the owner of the bicycles as defined by the statute. The intent must be to deprive the owner "permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner". T.C.A. § 39-11-106(8)(A). The evidence meets this standard. Defendant was stopped by Officer Ballard while driving in the opposite direction of the crime scene, with no apparent intent to return. He still had the bicycles in his possession.

It is well-established "that a jury may infer a criminal defendant's intent from the surrounding facts and circumstances." State v. Roberts, 943 S.W.2d 403, 410 (Tenn. Crim. App. 1996), *overruled on other grounds by* State v. Ralph, 6 S.W.3d 251, 257 (Tenn. 1999). Defendant hurriedly drove away from the scene, after placing two bicycles into the back of his truck, even after a witness yelled for him to "stop." A reasonable jury could easily infer that Defendant had the intent to permanently deprive the owner of the property.

**CONCLUSION**

From a review of the record, we find that the evidence presented was sufficient to support the defendant's convictions for theft of property and aggravated burglary. For the reasons stated herein the judgment of the criminal court is affirmed.

_____
THOMAS T. WOODALL, JUDGE