# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs August 22, 2012

## STATE OF TENNESSEE v. JAMES MICHAEL WATKINS, ALIAS MICHAEL WILSON

**Appeal from the Criminal Court of Hamilton County**
**No. 278254   Rebecca Stern, Judge**

---

**No. E2011-02623-CCA-R3-CD - Filed December 19, 2012**

---

James M. Watkins ("the Defendant") appeals his jury convictions for burglary of a business, vandalism of property worth $1,000 or more but less than $10,000, and possession of burglary tools. He received an effective sentence of twelve years as a Range III, career offender. On appeal, he asserts that the trial court erred in denying his motion to suppress the contents found as a result of a stop and subsequent search of the Defendant and a bag in his possession. He also argues the following: that the trial court erred in overruling the Defendant's objection to a jury instruction; that newly acquired evidence exists that would have affected the outcome of the trial; and that Officer Rogers' testimony was perjury that prejudiced the Defendant. Lastly, the Defendant alleges that the evidence presented at trial was insufficient to support his convictions. After a thorough review of the record and the applicable law, we affirm the Defendant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments
of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Christopher H. Jones (on appeal) and Jay Underwood (at trial), Chattanooga, Tennessee, for the appellant, James M. Watkins.

Robert E. Cooper, Jr., Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; William H. Cox, III, District Attorney General; and Brian Finlay, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual and Procedural Background

A Hamilton County Grand Jury indicted the Defendant on four counts: burglary of a business, a Class D felony; vandalism of property worth $1,000 or more but less than $10,000, a Class D felony; possession of burglary tools, a Class A misdemeanor; and criminal impersonation, a Class B misdemeanor. The indictment arose from charges that the Defendant broke into SMP Industries in Chattanooga on September 24, 2010. Prior to the Defendant's trial, he moved to suppress all evidence found as a result of the stop and search of the Defendant and the bag that he was carrying. The trial court held an evidentiary hearing on the Defendant's suppression motion.

*Proof at Suppression Hearing*

Officer Nathan Rogers, Chattanooga Police Department, testified that at 11:45 p.m. on September 24, 2010, he received a call to respond to a burglary in progress at a business, SMP Industries. When he arrived at the scene, he learned from employees of the business that they saw "a black male wearing all black carrying a large bag and leaving on foot." They informed Officer Rogers that the individual left in the direction from which Officer Rogers came.

Shortly thereafter, at approximately 11:45 p.m., he observed a black male approximately one hundred yards away, whom he later identified as the Defendant, in all black attire with a large bag. Officer Rogers described the bag as a large "laptop type of bag" that was a light brown color. He approached the Defendant and began questioning him from about fifteen yards away for approximately two or three minutes. According to Officer Rogers, the Defendant appeared "very agitated and nervous, soaked in sweat, trying to fix a chain on a bicycle with a very large bag across the front of his body."

Once another officer, Officer Hughes, arrived, Officer Rogers moved closer to the Defendant and noticed a screwdriver in the Defendant's pocket and at least one screwdriver protruding from a pocket in the Defendant's bag. At that point, Officer Rogers asked the Defendant to approach Officer Rogers' car for a pat-down to check for weapons. According to Officer Rogers, seeing a screwdriver led him to believe that the Defendant "possibly [has] been involved in a burglary because [the screwdriver is] a burglary tool." He also asked the Defendant for permission to search the bag, and the Defendant acquiesced. Inside the Defendant's bag, Officer Rogers found two sledge hammers, more screwdrivers, a belt, a camera, and a bag full of pens. Officer Rogers testified that he learned that the camera belonged to the business where the break-in occurred and that the pens had the name of the

business written on them. Shortly after looking through the bag, Officer Rogers placed the Defendant under arrest.

On cross-examination, Officer Rogers acknowledged that the employee conversing with dispatch stated that he could not discern whether the individual was black or white. He also acknowledged hearing the employee report that the suspect was carrying two white bags, and he agreed that the employee made no mention of seeing a bicycle. However, Officer Rogers insisted that the employees told him in person that the individual was carrying two black bags. He denied activating his lights during this encounter and did not believe, but was not certain, that Officer Hughes activated his lights, either.

At the conclusion of the hearing, the trial court found that the Defendant was on the side of the road with "an obvious problem," such that it was "normal for a police officer to stop and see what's going on." Furthermore, the trial court found that the Defendant was "100 yards away from a burglary. He's wearing all black clothing. He's got an unusual looking dark . . . case strapped to the front of his body . . . . [Officers Rogers] at some point could see the screwdriver. The [D]efendant was very agitated and nervous." Moreover, the trial court noted that the screwdriver, which was in plain sight, was the only item found on the Defendant's person and that the Defendant consented to the search of his bag. Accordingly, the trial court denied the Defendant's motion to suppress the evidence found as a result of the stop and subsequent search of the Defendant's person and bag.

*Proof at Trial*

Ronald M. Gladden, an employee at SMP Industries, a manufacturer of metal display racks, testified at trial that he was the supervisor on duty on the night of a break-in in September 2010. He received a call while in the plant that an alarm had sounded in a separate building where the personnel offices were located ("personnel building"). Gladden asked another employee, Craig Cushion, to accompany him to check out the personnel building. From the parking lot, Gladden and Cushion noticed a light on in the building, and Gladden observed a man walk past the window. At that point, Cushion called the police.

Approximately five minutes after first observing the individual in the personnel building, the individual exited the building through the front door. Gladden described the person as a black male wearing dark clothes and carrying a dark bag. Once the individual was about seventy-five to one hundred yards from Gladden, the individual disappeared out of Gladden's sight. Gladden and Cushion continued walking, and shortly thereafter the police arrived. As Gladden and Cushion spoke with the police, they observed the Defendant approaching them on a bicycle. A police officer asked the Defendant where he was coming

from, and the Defendant answered "construction work." Gladden noted that this interaction took place at approximately 11:30 p.m.

Gladden testified further that the Defendant gave the officer permission to look inside his bag. When the officer did so, the officer found a screwdriver, a hammer, and a crow bar inside the bag. The officer asked Gladden and Cushion if this man (the Defendant) was the person that they saw exiting the personnel building, but they replied that they did not know because they never saw the face of the man who left the building. On cross-examination, Gladden acknowledged that the individual who left the personnel building was traveling south, and when they came upon the Defendant on his bicycle, the Defendant appeared to be traveling east.

Robert Craig Cushion testified that he had worked at SMP Industries for approximately six years and that he was working on the night of September 24, 2010. He remembered Gladden's receiving a call from his boss about an alarm going off in the personnel building at approximately 11:30 p.m. Cushion and Gladden approached the personnel building and noticed that the lights were on, which was unusual for that time of night. Cushion did not see anyone in the window, but after a short time he observed a man leave the building. He was "pretty sure" the individual was a black male with dark clothing and carrying a "white garbage bag or something." At this point, Cushion called 911.

In this phone call, admitted into evidence, Cushion could not discern whether the male who left the personnel building was black or white. He stated that the male was wearing dark clothing and carrying white bags. When the emergency operator asked if the male had two white bags, Cushion responded that he believed so but that he thought he saw a bag in the male's hand. He described the direction in which the male was traveling and then noted that the male must have left the road because Cushion had lost sight of the individual. Cushion testified that the police arrived within five minutes after the end of the call.

On cross-examination, Cushion testified that the Defendant had a brown bag with him when he was detained by the police. Further, Cushion did not think the brown bag was the same bag that he observed earlier being carried by the man who exited the personnel building. He also acknowledged that he saw the Defendant coming from a different direction in which he observed the male traveling who exited the personnel building. He could not identify the Defendant as the man who exited the personnel building.

Officer Nathan Rogers testified that on September 24, 2010, he received a call about a potential burglary in progress. He also learned that a male was traveling on foot, wearing dark clothing, and carrying bags. When he arrived at the scene, he saw Gladden and Cushion. At some point, Officer Rogers noticed the Defendant trying to fix the chain on a

bicycle. The Defendant appeared to be traveling from a different direction from where Cushion and Gladden had told Officer Rogers that they thought the suspect was going. When Officer Rogers approached the Defendant, he observed that the Defendant was wearing a black t-shirt and black cutoff shorts and that the Defendant "was soaked in perspiration." At first the Defendant identified himself to Officer Rogers using a name other than the Defendant's name. However, the Defendant later correctly identified himself to a detective.

Officer Rogers described the Defendant's demeanor as being agitated or nervous. He identified a brown bag that he observed strapped across the Defendant's chest. At some point on the night in question, the Defendant gave Officer Rogers permission to search the bag. Inside the bag, Officer Rogers found a black jacket, gloves, a mask, a sledge hammer, screwdrivers, a digital camera, and a grocery bag full of pens and stationery that had the name "SMP Industries" printed on them. Officer Rogers confirmed that a representative of SMP Industries identified the digital camera as well as the stationery items as belonging to the company.

On cross-examination, Officer Rogers denied initiating his blue lights or siren before or during the time in which he spoke with the Defendant. Officer Rogers estimated that he and the Defendant were approximately one hundred yards from the personnel building at SMP Industries. He acknowledged that, although fingerprint tests are fairly simple, such an analysis was never conducted in this case.

During a break in the proceedings, the trial court reviewed the proposed jury instructions with the defense and the State. The following interaction took place:

> The Court: Okay. Most of them are standard. Just they're – the only ones I can foresee you having an issue with was the . . . possession of recently stolen property . . . . Because everything else is just standard. . . .
>
> . . . .
>
> Mr. Underwood: I will object to the recently receiving instruction, Your Honor.
>
> The Court: Okay. Because there's no charge of theft I assume is your reason?
>
> Mr. Underwood: Yes.

The Court: Well, I thought about that. But the problem is with burglary you have to show an intent to commit theft. So I think that that's appropriate because that goes to the intent to commit theft.

. . . .

Okay. I mean, I struggled with it myself and so did my clerk. But I think it's appropriate because of that for that reason. . . . All right, overruled. But you have a good appeal issue.

The State continued with its case in chief. Bruce Young, Chief Executive Officer of SMP Industries, testified that he received a phone call from his security company on the evening of September 24, 2010. The security company believed that someone had broken into the personnel building based on "door alarms open and motion sensors going off." Young called a supervisor on duty, Gladden, and asked Gladden to assess the situation from outside the personnel building. Once Gladden reported back that lights were on and that he saw motion from within the building, Young instructed Gladden to call 911, and Young began driving toward the facility. Young estimated that fifteen minutes passed between the time he spoke with Gladden on the phone and when he arrived at the facility.

Upon reaching the facility, a police officer asked Young to walk through the building and identify anything missing or out of place. Young testified,

The first thing I noticed before I got in the building [was] that the door had been pried open or beat open. The jamb and deadbolt and regular latch had been knocked out. The Sonitrol alarm box . . . had been jerked off the wall and the wires had been cut. And then we proceeded through the next door, which had been pried open . . . . That jamb had also been busted. The door had not. And then immediately when we went into that room, it is an area about this area right here. And where we had a secretarial staff that staffs that part, and all of her stuff was on the floor, dumped out, drawers emptied, the doors open off the credenzas. The first thing I saw after that was that the camera was missing. . . .

So from there we went to our personnel manager's office. Same situation. Stuff pulled out. Drawers open and so forth. And then we went to another office which is behind a restroom and in there the closet doors w[ere] open and stuff had been pulled out. And there was [a] petty cash box opened and change and stuff on the floor. And [the officer] asked me if there was any

-6-

money missing. And I said I can't identify any money because I would not have any knowledge of what was there.

From there we went to a side office which is kind of a storage area. Here again the stuff was pulled out. And then we went to another little small area, which was kind of an assembly rear-door access in which we had a computer, transmission wires, fiberoptic cables and stuff like that, and they had been – some of which had been cut. And some of the equipment had been damaged. . . .

We went back outside and [the officer] said let's walk around the building. So we walked around the building. And the phone lines on the back had been cut. And there are six or eight phone lines coming into the building. They had been cut.

Young testified that the cost of the repairs was approximately $2,500 to $3,000. He noted that the computers, telephones, and television had not been taken. Young identified a bag at trial as a bag similar in size to the bag the police officer emptied at the scene. He remembered that the missing digital camera and various items bearing the SMP logo were found among the contents of the bag. Young stated that the lighting was sufficient near the personnel building such that one "would have been able to determine if the person exited the building."

The State rested its proof, and the defense moved for a judgment of acquittal "[b]ased upon the fact that all the eye witnesses saw the actual suspect heading in the opposite direction on foot. And the fact that [the Defendant was] found heading east bound with a bicycle." The trial court overruled the motion for acquittal, stating that it believed this matter was a jury question. The defense then proceeded with its case in chief by calling Officer Rogers to testify again.

Officer Rogers stated that the Defendant did not identify himself to the officer using his actual name. Although the Defendant was looking down, Officer Rogers was sure that the name the Defendant gave was not the Defendant's legal name. After this brief testimony, the defense rested its proof.

After the close of proof, the jury deliberated and returned a verdict of guilty for burglary of a business, a Class D felony, vandalism of property worth $1,000 or more but less than $10,000, a Class D felony, and possession of burglary tools, a Class A misdemeanor. The jury found the Defendant not guilty as to the count of criminal impersonation. The trial court sentenced the Defendant as a Range III, career offender, to twelve years for the

burglary conviction, twelve years for the vandalism conviction, and eleven months, twenty-nine days for the possession of burglary tools conviction, to be served concurrently, for an effective sentence of twelve years. The Defendant filed a motion for new trial, which the trial court subsequently denied. He now appeals, contending that the trial court erred in denying the motion to suppress the evidence obtained as a result of the stop and search of the Defendant and the bag found on his person. He also contends the following: that the trial court erred in overruling the Defendant's objection to a jury instruction; that newly discovered evidence exists that would have affected the outcome of the trial; and that Officer Rogers' testimony was perjury that prejudiced the Defendant. Lastly, the Defendant challenges the sufficiency of the evidence supporting his convictions.

Analysis

*Motion to Suppress*

The Defendant contends that the trial court erred in denying his motion to suppress the items found within a bag that the Defendant was carrying when Officer Rogers approached him. Specifically, the Defendant argues that he was seized improperly by Officer Rogers and that, therefore, all items found as a result of that seizure are the fruit of an improper stop. The State responds that Officer Rogers had a reasonable suspicion of criminal activity when he stopped the Defendant and that the Defendant consented to the search of his bag.

When conducting a review of the trial court's determinations from a suppression hearing, we may consider the evidence adduced at the suppression hearing as well as evidence introduced at trial in determining whether the trial court properly denied the motion to suppress. State v. Henning, 975 S.W.2d 290, 297-99 (Tenn. 1998). Questions regarding the witnesses' credibility, "the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, we will uphold the trial court's factual findings unless the preponderance of the evidence is otherwise. Id. However, where the trial court has applied the law to the facts, we will conduct a *de novo* review. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Because the State is the prevailing party, it is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. State v. Ingram, 331 S.W.3d 746, 754 (Tenn. 2011) (citing Mapp v. Ohio, 367 U.S. 643, 655

(1961)).[1]  Accordingly, "under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement."  State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000) (quoting State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997)).

An exception to the warrant requirement within the context of seizures occurs "when a police officer makes an investigatory stop based upon reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." Id. (citing Terry v. Ohio, 392 U.S. 1, 20-21 (1968); State v. Bridges, 963 S.W.2d 487, 492 (Tenn. 1997)).  The Tennessee Supreme Court defines reasonable suspicion as "'a particularized and objective basis for suspecting the subject of a stop of criminal activity.'" State v. Day, 263 S.W.3d 891, 903 (Tenn. 2008) (quoting Binette, 33 S.W.3d at 218).  This Court shall consider "the totality of the circumstances surrounding the stop" in assessing whether the officer had the requisite reasonable suspicion necessary to justify the stop. Binette, 33 S.W.3d at 218 (citing Alabama v. White, 496 U.S. 325, 330 (1990)).

At the suppression hearing, Officer Rogers testified that, when he arrived at the scene of the burglary, employees informed him that they saw "a black male wearing all black carrying a large bag and leaving on foot."  This incident occurred sometime after approximately 11:30 p.m.  Then, shortly after Officer Rogers' arrival, he observed approximately one hundred yards away from SMP Industries a black male, whom he later identified as the Defendant, in all black attire with a large bag.  We note that the evidence established that the Defendant approached from a different direction than the employees stated that they observed the burglar leave, and the employees' descriptions of the burglar's bag differed from each other and the description Officer Rogers gave of the Defendant's bag. Even so, given the extent to which the Defendant matched the employees' description of the burglar, the time of night, and the proximity of the Defendant to SMP Industries, we conclude that Officer Rogers had sufficient reasonable suspicion to conduct an investigatory stop of the Defendant.

---

[1]The Fourth Amendment is applicable to the States through the Fourteenth Amendment to the United States Constitution.  See Mapp, 367 U.S. at 655; Ingram, 331 S.W.3d at 754. The intent and purpose of article I, section 7 of the Tennessee Constitution is identical with the Fourth Amendment; however, our Supreme Court has noted previously that Tennessee's search and seizure case law has developed independently from, and extends greater protection than, federal law. See State v. Richards, 286 S.W.3d 873, 877-78 (Tenn. 2009).

Pertaining to the search of the Defendant's bag, the Tennessee Supreme Court has stated that it is a "fundamental principle under our state and federal constitutions that a warrantless search is presumed invalid and any evidence discovered as a result is subject to suppression." Ingram, 331 S.W.3d at 754 (citing Day, 263 S.W.3d at 901; State v. Berrios, 235 S.W.3d 99, 104 (Tenn. 2007)). Thus, when a search or seizure is determined to be illegal, the evidence obtained in that search or seizure is excluded from use by the prosecution. See Wong Sun v. United States, 371 U.S. 471, 484-85 (1963); State v. Huddleston, 924 S.W.2d 666, 674 (Tenn. 1996). This exclusionary rule "was designed to protect Fourth Amendment guarantees by deterring lawless searches, seizures, and arrests." Huddleston, 924 S.W.2d at 674.

There are several recognized exceptions to the rule against warrantless searches. Ingram, 331 S.W.3d at 755. Because a trial court must presume "that a warrantless search or seizure is unreasonable," it is the State's burden to establish "that one of the exceptions to the warrant requirement applied at the time of the search or seizure." Samuel L. Giddens v. State, No. M2006-01938-CCA-R3-PC, 2008 WL 271967, at *3 (Tenn. Crim. App. Jan. 29, 2008) (citing Yeargan, 958 S.W.2d at 629). The most common of these exceptions include: (1) a stop and frisk situation; (2) a search incident to a lawful arrest; (3) consent to search; (4) probable cause to search with exigent circumstances; (5) hot pursuit; and (6) plain view. Day, 263 S.W.3d at 901 n.9 (citations omitted). Courts are admonished to keep these recognized exceptions to the warrant rule "'well-delineated,' 'jealously and carefully drawn,' and 'narrowly' defined." Ingram, 331 S.W.3d at 755 (citations omitted).

Turning to the first relevant exception to the warrant requirement, a frisk, this Court long has recognized that "[t]he Fourth Amendment permits a protective frisk where a law enforcement officer has reasonable suspicion that the suspect is armed." State v. Winn, 974 S.W.2d 700, 703 (Tenn. Crim. App. 1998) (citing Terry, 392 U.S. at 27). See also Bridges, 963 S.W.2d at 493 ("Once a valid stop has been made, police may pat a suspect's outer clothing if the police have a reasonable, particularized suspicion that the suspect is armed."). In such a scenario, the police officer is permitted to conduct a limited pat-down search of the person in accordance with the principles of Terry in order to protect the officer's safety. State v. Crutcher, 989 S.W.2d 295, 300 (Tenn. 1999); see also Ingram, 331 S.W.3d at 756. Accordingly, "[t]he purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." Adams v. Williams, 407 U.S. 143, 146 (1972).

In looking at the appropriateness of the frisk, we must assess "both the nature of the suspected offense and the reasonableness of the belief that the suspect was armed." Winn, 974 S.W.2d at 703. Certain suspected crimes "might typically involve the use of a weapon," such that "a suspicion of robbery, burglary, rape, assault with a weapon, homicide, and large

scale narcotics trafficking might allow an officer to reasonably infer that a weapon might be in the possession of the suspect." Id. When the individual is not suspected of engaging in criminal conduct typically involving the use of a weapon, "'other circumstances' must be present to justify a Terry frisk." Id. at 703-04. Examples of such other circumstances that may justify the type of frisk conducted in the instant case include the following:

> [A] characteristic bulge in the suspect's clothing; observation of an object in the pocket which might be a weapon; an otherwise inexplicable sudden movement toward a pocket or other place where a weapon could be concealed; an otherwise inexplicable failure to remove a hand from a pocket; backing away by the suspect under circumstances suggesting he was moving back to give himself time and space to draw a weapon; awareness that the suspect had previously been engaged in serious criminal conduct; awareness that the suspect had previously been armed; [and] discovery of a weapon in the suspect's possession . . . .

Id. (quoting LaFave, Search and Seizure, § 9.5(a) (3d ed. 1996 & Supp. 1997)).

In the case at hand, the first search, in which Officer Rogers frisked the Defendant, was clearly appropriate within the parameters of a Terry stop and frisk. Because Officer Rogers had a reasonable, articulable suspicion that the Defendant had been engaged in a burglary, he reasonably could infer that the Defendant might be in possession of a weapon. See id. at 703. Moreover, based on the presence of a screwdriver in plain view in the Defendant's pocket, Officer Rogers had a reasonable, articulable suspicion that the Defendant was armed. Thus, Officer Rogers conducted a limited pat-down for the purpose of ascertaining the presence of more potential weapons. On the record before us, we do not discern any contention regarding the propriety of the first search.

The next relevant exception is a consensual search. In order for a consensual search to be constitutional, "it must be 'unequivocal, specific, intelligently given, and uncontaminated by duress or coercion.'" State v. Cox, 171 S.W.3d 174, 184 (Tenn. 2005) (quoting State v. Simpson, 968 S.W.2d 776, 784 (Tenn. 1998)). "'[T]he existence of consent and whether it was voluntarily given are questions of fact' which require examining the totality of the circumstances." Id. at 184-85 (quoting State v. Ashworth, 3 S.W.3d 25, 29 (Tenn. Crim. App. 1999)). Courts look at several factors to determine voluntariness, including:

> (1) Time and place of the encounter; (2) Whether the encounter was in a public or secluded place; (3) The number of officers present; (4) The degree of

hostility; (5) Whether weapons were displayed; (6) Whether consent was requested; and (7) Whether the consenter initiated contact with the police.

Id. at 185.

The evidence does not preponderate against the findings of the trial court. The trial court found that all items, with the exception of the screwdriver found on the Defendant's person, were found in the bag that the Defendant was carrying. According to Officer Rogers, Officer Rogers requested permission to look through the Defendant's bag, and the Defendant acquiesced. Additionally, Officer Rogers testified that the Defendant was "agitated or nervous" but did not mention that any hostility existed between him and the Defendant. This encounter occurred at approximately 11:45 p.m. but was on a public road, and only two officers were present. Thus, we hold that the Defendant voluntarily consented to the search of his bag.

Based on the analysis above, the trial court appropriately denied the Defendant's motion to suppress the evidence found as a result of the investigatory stop and search of the Defendant's bag. Accordingly, the Defendant is entitled to no relief on this issue.

*Jury Instruction*

The Defendant asserts that "[t]he trial court erred in overruling the Defendant's objection to a jury instruction on inferences from recently stolen property. This was improper because the indictment does not allege that the [D]efendant committed theft." The State relies on State v. James, 315 S.W.3d 440 (Tenn. 2010) to maintain that the jury instruction was proper.

The trial court provided the following instruction to the jury pursuant to Tennessee Pattern Jury Instructions - Criminal 42.20 (14th Ed. 2010):

> Inference from possession of recently stolen property. If you find beyond a reasonable doubt from the evidence that the property in question had been recently stolen and that soon thereafter the defendant was in possession of the stolen property, this possession unless satisfactorily explained is ordinarily a circumstance from which you may reasonably draw an inference that the defendant gained possession through theft. However, you are never required to make this inference.
>
> It is for you to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits you to

draw from the possession of recently stolen property. When the evidence is offered that the defendant was in possession of recently stolen property, the defendant has the right to introduce evidence that he came into possession of the property lawfully or possession may be satisfactorily explained through other evidence independent of any testimony or evidence offered by the defendant.

In considering whether possession of recently stolen property has been satisfactorily explained, you are reminded that in the exercise of constitutional rights the accused need not take the witness stand and testify.

The term recently is a relative term and has no fixed meaning. Whether property may be considered as recently stolen depends on the nature of the property and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft the more doubtful becomes the inference which may be drawn from unexplained possession. The correctness of the inference and the weight to be given any explanation that may be shown by the evidence are matters that must be determined by you and you are not bound to accept either. You must weigh all the evidence presented as to the defendant's alleged possession of the property in question and decide in light of all the facts and circumstances present whether any inference is warranted. You're reminded that the burden of proving the defendant's guilt of the offense beyond a reasonable doubt remains on the State.

This Court has upheld this jury instruction for use in consideration of a burglary indictment. See State v. Lankford, 298 S.W.3d 176, 184 (Tenn. Crim. App. 2008); Smart v. State, 544 S.W.2d 109, 110-11 (Tenn. Crim. App. 1976 ). Additionally, in James, the Tennessee Supreme Court held that a jury may "infer a burglary from possession of recently stolen property only when there exists a rational connection between possession and participation, when guilt more likely than not flows from possession, and, importantly, when there is some other evidence corroborating the burglary that warrants the inference." 315 S.W.3d at 452 (citing 13 Am. Jur. 2d Burglary § 48 (2009)).

The trial court in this case included in the jury instruction, "You must weigh all the evidence presented as to the defendant's alleged possession of the property in question and decide in light of all the facts and circumstances present whether any inference is warranted." Thus, the trial court did not instruct the jury to rely solely on the possession of stolen property in determining the Defendant's guilt as to burglary. See James, 315 S.W.3d at 454 ("That the jury was authorized, in its prerogative, to consider the propriety of the inference in the context of all the evidence presented at trial in reaching their verdict was entirely

appropriate."). Accordingly, the trial court properly instructed the jury, and the Defendant is entitled to no relief on this issue.

*Newly Discovered Evidence*

The Defendant contends that newly discovered evidence in this case would have changed the jury's verdicts. The evidence that the Defendant claims is newly discovered is that the Defendant, on the night in question, "immediately told Officer Rogers that a 'guy ran past him' and that [the] Defendant 'found a tan bag' on the road left by a man on foot, which had incriminating evidence that was presented to the jury." The State responds that this evidence is not "newly acquired" because the evidence is the Defendant's own statement. Secondly, the State contends that the Defendant did not use reasonable diligence in acquiring the evidence.

Determining whether to grant or deny a motion for new trial based on newly discovered evidence "rests in the sound discretion of the trial court." State v. Walker, 910 S.W.2d 381, 395 (Tenn. 1995). Thus, we will review the trial court's decision under an abuse of discretion standard. See State v. Meade, 942 S.W.2d 561, 565 (Tenn. Crim. App. 1996). In order to prove successfully that newly discovered evidence should result in a new trial, a claimant must establish: "'(1) reasonable diligence in seeking the newly discovered evidence; (2) materiality of the evidence'; and (3) the likelihood that the evidence would change the outcome of the trial." State v. Bobby Wells, Jr., No. E2000-01496-CCA-R3-CD, 2001 WL 725305, at *5 (Tenn. Crim. App. June 28, 2001), perm. app. denied (Tenn. Oct. 1, 2001) (quoting State v. Nichols, 877 S.W.2d 722, 737 (Tenn. 1994)). A finding of reasonable diligence turns on whether the defendant demonstrates that neither the defendant nor trial counsel "had knowledge of the alleged newly discovered evidence prior to trial." State v. Caldwell, 977 S.W.2d 110, 117 (Tenn. Crim. App. 1997) (citing Jones v. State, 452 S.W.2d 365, 367 (Tenn. Crim. App. 1970)).

"An assessment of the witnesses' credibility by the trial court is essential in order for the trial court to determine whether the evidence is likely to change the result of the trial." State v. Bowers, 77 S.W.3d 776, 784 (Tenn. Crim. App. 2001). Moreover, in assessing the credibility of the evidence, the trial court must deny the motion for new trial "'if the [c]ourt concludes that the evidence would not be worthy of belief by the jury.'" Id. (quoting State v. Marlon D. Beauregard, No. W1999-01496-CCA-R3-CD, 2000 WL 705978, at *4 (Tenn. Crim. App. May 26, 2000), perm. app. denied (Tenn. Mar. 5, 2001). When a trial court's denial is based upon a finding that the newly discovered evidence lacks credibility, appellate courts will not find an abuse of discretion. Walker, 910 S.W.2d at 395.

Here, the alleged "newly discovered evidence" is the Defendant's contention that, when stopped by Officer Rogers, the Defendant "immediately told Officer Rogers that a 'guy ran past him' and that [the] Defendant 'found a tan bag' on the road left by a man on foot, which had incriminating evidence that was presented to the jury." The Defendant had knowledge of this evidence prior to trial because it is his own assertion that he made the statement before his arrest. Thus, the Defendant failed to establish "reasonable diligence" as articulated by this Court. See Caldwell, 977 S.W.2d at 117 (citation omitted). Therefore, the Defendant is entitled to no relief on this issue.

### Officer Rogers' Testimony

The Defendant, in his appellate brief, contends that "Officer Nathan Rogers . . . committed perjury by not acknowledging Defendant's statement that a 'guy ran past him' to the jury after the alleged theft." The State responds that the Defendant has failed to establish even minimally that Officer Rogers committed perjury.

Initially, we note that "[i]nconsistencies in testimony do not always equate with 'perjury.'" State v. Elkins, No. E2001-01245-CCA-R3-CD, 2002 WL 464799, at *7 (Tenn. Crim. App. Mar. 27, 2002), aff'd, 102 S.W.3d 578 (Tenn. 2003). The Defendant, however, has presented no inconsistency in Officer Rogers' testimony. Rather, Officer Rogers was never asked by the State or the defense regarding the Defendant's statement that a "guy ran past him." This issue is without merit.

### Sufficiency of the Evidence

Lastly, the Defendant challenges the sufficiency of the evidence supporting his convictions. Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The appellate court does not weigh the evidence anew. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. Id. Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which

may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Furthermore, it is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

## Burglary of a Business

Pursuant to Tennessee Code Annotated section 39-14-402(a)(3) (2010), "[a] person commits burglary who, without the effective consent of the property owner: [e]nters a building and commits or attempts to commit a felony, theft or assault."

The Defendant contends that the evidence is not sufficient to support his burglary conviction. As support, he relies on the testimony from the two eyewitnesses, Gladden and Cushion, that they could not conclusively identify the Defendant as the man they saw leaving the personnel building.

The evidence at trial established that Cushion and Gladden, employees at SMP Industries, observed an individual inside the personnel building shortly before 11:30 p.m. on September 24, 2010. Eventually, the individual exited the building, and they followed the individual until the individual disappeared from their sight. Gladden described the individual as a black male wearing dark clothes and carrying a dark bag. Cushion provided a similar description, except that Cushion believed the individual was carrying what looked like a "white garbage bag."

Within a few minutes, Officer Rogers arrived, and as Gladden and Cushion spoke with Officer Rogers, they observed a male, who turned out to be the Defendant, approaching them with a bicycle. Officer Rogers described the Defendant as seeming agitated or nervous. He noticed that the Defendant was carrying a bag, so Officer Rogers asked for permission to look inside the bag, and the Defendant acquiesced. Upon looking inside the bag, Officer Rogers found a black jacket, gloves, a mask, a sledge hammer, screwdrivers, a digital

camera, and a grocery bag full of pens and stationery which were labeled with the "SMP Industries" logo.

Given that circumstantial evidence is given equal weight as direct evidence, Dorantes, 331 S.W.3d at 381, the evidence is sufficient for a jury to determine that the Defendant entered the personnel building with the purpose of committing a theft. Therefore, when viewed in a light most favorable to the State, the evidence was sufficient to support the Defendant's burglary conviction.

### Vandalism of Property Worth $1,000 or More but Less Than $10,000

A person is guilty of vandalism who "knowingly causes damage to or the destruction of any real or personal property of another or of the state, the United States, any county, city, or town knowing that the person does not have the owner's effective consent." Tenn. Code Ann. § 39-14-408 (2010). "Damage" is defined to include "[d]estroying, polluting or contaminating property" or "[t]ampering with property and causing pecuniary loss or substantial inconvenience to the owner or a third person." Id.

Bruce Young testified that he walked through the personnel building in order to identify missing or altered items to the police. He observed signs of forced entry and noticed that the alarm unit had been pulled from the wall. He observed that the secretarial staff's office area had all the desk items strewn and that the company's camera was missing. Additionally, "computer, transmission wires, [and] fiberoptic cables," as well as the phone lines, had all been cut, and some of the equipment was damaged. Young estimated that the cost of repairs was approximately $2,500 to $3,000. Thus, the evidence was sufficient for a jury to find the Defendant guilty of vandalism worth $1,000 or more but less than $10,000.

### Possession of Burglary Tools

Under Tennessee Code Annotated section 39-14-701 (2010), "[a] person who possesses any tool, machine or implement with intent to use the same, or allow the same to be used, to commit any burglary, commits a Class A misdemeanor."

When Officer Rogers arrived at the scene of the burglary, he observed the Defendant approaching with a bag and a bicycle. Upon receiving the Defendant's consent, Officer Rogers searched the bag and found a black jacket, gloves, a mask, a sledge hammer, and screwdrivers. Young testified that the personnel building had visible signs of forced entry. Based on the circumstantial evidence that these tools were found in the same bag as items stolen from the personnel building, the evidence is sufficient to support the Defendant's

conviction for possession of burglary tools. Accordingly, the Defendant is entitled to no relief on the basis of the sufficiency of the evidence.

## CONCLUSION

For the reasons articulated above, we affirm the Defendant's convictions.


_____
JEFFREY S. BIVINS, JUDGE